(57 App. Div. 158.)

### WILSON v. MECHANICAL ORGUINETTE CO.

(Supreme Court, Appellate Division, Second Department.   January 25, 1901.)

1. CORPORATION—SALE OF ASSETS—LIABILITY ON CONTRACTS.

Plaintiff's decedent took an assignment of patent rights on certain mechanical musical instruments from defendant, and granted him a license to sell and manufacture the articles covered by such patents for a royalty, to continue until the end of the term of the patent having the longest time to run. Afterwards a new corporation was organized, to which defendant, and another corporation with which it was associated, conveyed its property, taking stock in the new corporation in payment. Plaintiff sued defendant to recover the royalties on goods sold, both before and after the organization of the new corporation. *Held*, that plaintiff could not recover against defendant for royalties on goods sold by the new corporation.

2. SAME—ULTRA VIRES—OBJECTION—WHO MAY MAKE.

Where plaintiff was not a stockholder nor a judgment creditor of defendant at the time of the transfer of its business to a new corporation, she cannot claim that such transfer was ultra vires, as in violation of the prohibition of transfers in contemplation of insolvency.

Appeal from trial term, Kings county.

Action by Annie E. Wilson, as administratrix with will annexed of Henry Wilson, deceased, against the Mechanical Orguinette Company. From a judgment dismissing part of plaintiff's cause of action, she appeals. Affirmed.

Argued before GOODRICH, P. J., and WOODWARD, JENKS, and SEWELL, JJ.

Herbert T. Ketcham, for appellant.

William B. Hornblower (William L. Perkins, on the brief), for respondent.

WOODWARD, J.   This action was brought to recover royalties specified in a license given by Henry Wilson, now deceased, to the defendant. It appears that in October, 1882, the defendant was in litigation with certain parties, involving questions of rights in patents, and that it was the owner of two certain letters patent of the United States. At the same time Henry Wilson, known as party of the second part in the agreement, was the owner and holder of the legal title to a large number of letters patent of the United States, and patent rights and interests, including a number which were known as the "Needham Patents," and these latter subsequently, and in 1884, became the property of Needham & Son.   While Mr. Wilson was the owner of the legal title to all of these patents, and for the purpose of ending the litigation and quieting the title to the rights necessary in carrying on the business of the defendant, the latter assigned to Mr. Wilson all its right, title, and interest in the two letters patent which it owned, together with "all other patents and patent rights or licenses relating to mechanical musical instruments which the party of the first part now owns or to which it may be entitled."   In consideration of the assignment and other matters, Mr. Wilson, "for himself, his heirs, executors, and administrators, and assigns," agreed to "grant and convey unto the said party of the first part the exclusive

license, liberty, and right to sell, anywhere throughout the United States of America and the territories thereof, but not directly or indirectly to or for export or delivery to purchasers in Great Britain and Ireland and in the Channel Islands, France, or Germany, mechanical musical instruments embodying exclusively the inventions, any or all of them, mentioned and described in either or any of the said letters patent or patent rights hereinbefore assigned by the said party of the first part," etc., "with permission to the said party of the first part to manufacture for its own business, or procure to be manufactured therefor, by such manufacturers in the United States as it may specifically for that purpose from time to time appoint, all such instruments as it is hereby licensed to sell"; provided "that the said party of the first part shall and will pay, and the said party of the first part hereby covenants and agrees to pay, to the said party of the second part, his executors, administrators, and assigns, at the end of each and every successive period of three months from and after the date hereof, and until the full end of the term for which that one of the said above-mentioned patents now having the longest time to run was granted, as a royalty or license fee for the license hereby granted, a sum equal to three per cent. upon the gross wholesale price of all mechanical musical instruments, or parts thereof, spools, and music paper, sold by it, the party of the first part, during each such period, respectively, whether embodying the inventions described in said letters patent or patent rights or not." The complaint alleges, on information and belief, that the defendant has sold, between the 30th day of October, 1882, and the 30th day of October, 1898, musical goods, etc., of the wholesale value of $2,780,000, and demands judgment for the sum of $83,400, being 3 per cent. upon the amount of the total sales, with interest to be calculated upon the various amounts as they may have become due under the terms of the agreement. The answer denies that the defendant covenanted to pay the sum or sums mentioned in the contract until the 5th day of February, 1901, the time fixed for the expiration of the patent having the longest time to run; denies generally the remaining portions of the complaint, except the formal averments; and sets up as a defense, on information and belief, that the royalties, claims, and demands of Henry Wilson had been paid before the commencement of this second action; and, as a second defense, that the contract had been canceled and rescinded by mutual consent as well as for a valuable consideration.

Upon the trial of the action it developed that on the 25th day of July, 1887, the defendant was merged into a new corporation organized under the laws of the state of Connecticut, which new company also purchased the property of a Boston company which had heretofore furnished the defendant with certain paper and supplies used in its business; and the learned trial court, being called upon to give construction to the contract, held that the defendant could not be held responsible for the sales made by the new corporation after the 25th day of July, 1887, and dismissed the complaint in respect to the claim for compensation after that time. The jury found a verdict for the plaintiff for the full amount of the claim up to the time that the new corporation took possession of the property, and the defend-

ant has not appealed from the judgment. The only question pre-sented on this appeal, therefore, is whether the court was justified in holding, as a matter of law, that the defendant was not liable for the royalties upon the sales made of the goods manufactured and put upon the market by the new corporation.

The plaintiff urges that the question was one of fact for the jury, on the theory that the defendant continued in existence for the purpose of making use of the license of Henry Wilson, deceased, in the manufacture and sale of the mechanical musical instruments formerly produced by the defendant; but a careful following of the elaborate argument of plaintiff's counsel fails to convince us of the soundness of this position. The plaintiff also urges that the transaction which attended the consolidation of the defendant with the Automatic Music Paper Company, and which evidenced the transfer of the assets of the former upon their face, shows that the defendant was intended by all the parties to continue as the sales agent of all goods which were to be hereafter sold of the kind covered by the Wilson license, which, it is contended, was nonassignable, and could not have been transferred to the new corporation known as the "Æolian Company." This contention is based upon the fact that the officers of the defendant were afterwards elected by the Æolian Company to the same relative positions, and that the business of the defendant was carried on with but few changes by the Æolian Company, though it is conceded that there were new men in the board of directors. If we view the transaction in the natural light, it will be plain that the position of the plaintiff is untenable. The defendant was, and for limited purposes still is, a corporation. There was a second corporation doing business in the city of Boston, with which the defendant had more or less intimate relations. The idea was conceived of consolidating the business of these two corporations. To this end the Æolian Company was organized under the laws of the state of Connecticut, and the board of directors of the defendant, under the authorization of the stockholders present at an annual meeting (none of the absent ones appearing to object), transferred all of the property of the defendant to the Æolian Company, taking in payment $60,000 of the $150,000 of stock issued by the corporation. At about the same time the Boston corporation was transferred to the Æolian Company, receiving therefor $60,000 of the stock and $20,000 in cash, the latter the avails of stocks which had been placed upon the market and purchased by outside parties. The creation of a corporation of a business character carries with it the presumption that it is for the purpose of transacting business, and, in the absence of something in the transaction which clearly points to an intention of abdicating its natural right of selling its own products, the court would not be warranted in holding that the defendant, which for all practicable business purposes had ceased to exist, was intended to be perpetuated for the purpose of doing the business which the corporation itself might do. There was nothing in the contract between the defendant and Wilson which obligated the defendant to continue the manufacture or sale of the goods for any particular time. The contract simply provided that, if the defendant did sell the goods, it must pay the royal-

ties agreed upon, and, the defendant having ceased to have a business existence upon the transfer of its property to the Æolian Company, the presumption must be that the latter, in the exercise of its corporate franchises, has sold the goods it has manufactured.

The plaintiff, however, insists that the transfer of the property of the defendant to the Æolian Company was ultra vires; that it in some manner violated the statute forbidding transfers in contemplation of insolvency, etc. But we do not discover that the plaintiff is in a position to raise any of these objections. The plaintiff is not a stockholder, nor, in respect to the claim which is involved in this appeal, was she a judgment creditor at the time of the transfer. The claim which is here asserted, and upon which the plaintiff claims the right to go to the jury, accrued after the transfer of the property was made to the Æolian Company. She is therefore in the position of the plaintiff in the case of Gray v. Steamship Co., 115 U. S. 116, 5 Sup. Ct. 1166, 29 L. Ed. 309, and has no right to complain of the transfer. While the courts have, as in the case of People v. Dallard, 134 N. Y. 269, 32 N. E. 54, 17 L. R. A. 737, held, in behalf of nonassenting stockholders, that a corporation could not sell all of its property to a foreign corporation for the purpose of carrying on its business, as that is a practical dissolution of the corporation, we find no authorities which hold that the stockholders may not authorize a transfer of the property to a new company, receiving the stock of such company in payment of the purchase price. This is exactly what was done in the case of Holmes & Griggs Mfg. Co. v. Holmes & Wessell Metal Co., 127 N. Y. 252, 27 N. E. 831, and the act was sanctioned by the court, which held that, even though the transactions were conceded to be ultra vires, the contract having become executed, the title of the stock vested in the plaintiff. The transaction being lawful, it cannot be used to support the rule of presumption urged by the plaintiff that the defendant must be presumed to have acted within the law, and without this there is no ground for the interpretation contended for by the plaintiff. In other words, the defendant having a lawful right to transfer the property to the Æolian Company, there is no room for the application of the rule that, where the evidence is equally consistent with a lawful and wrongful purpose, the law will adopt the interpretation which imputes to the parties a righteous, and not a vicious, intent.

While it is very likely true that Henry Wilson, in making his contract with the defendant, expected that the corporation would remain in existence and continue to sell the goods during the term of the contract, it is impossible, without making a new contract for the parties, to read into the agreement a covenant on the part of the defendant to remain in existence, or to continue to sell the goods if it was not to its advantage to do so. The case in spirit is in harmony with that of Jugla v. Trouttet, 120 N. Y. 21, 23 N. E. 1066, and it would have been error on the part of the trial court to have speculated upon the question of whether the defendant sold the goods or not. It was for the plaintiff to show that the defendant had sold the goods, and there was no evidence in the case from which a jury would have been authorized to find that the defendant had taken any

part in the transaction of the business of the Æolian Company since it came into the possession of the property of the Mechanical Orguinette Company.

The judgment appealed from should be affirmed, with costs. All concur.