(64 App. Div. 337.)

### WILSON v. AEOLIAN CO. et al.

(Supreme Court, Appellate Division, Second Department. October 4, 1901.)

1. CORPORATIONS — TRANSFER OF PROPERTY— CONSIDERATION — CREDITORS — TRUST.

Where the stockholders and officers of a business corporation unite with others to form a new corporation, to which all the property and assets of the old corporation are transferred in consideration for stock of the new corporation issued to the stockholders of the old, such new corporation will be deemed to hold the property and assets so received as trustee for the creditors of the old corporation, and may be required to account therefor.

2. SAME—RIGHTS OF CREDITORS.

Where the stockholders and officers of a business corporation unite with others to form a new corporation, to which all the property and assets of the old corporation are transferred and paid for by stock issued to such old stockholders, the transfer is valid as between the parties, and can be disturbed by creditors of the old corporation only to the extent necessary to collect their claims.

**3. SAME—LACHES—JUDGMENT.**

Where all the assets of a corporation were transferred to a new corporation organized and officered by the stockholders and officers of the old corporation, and a judgment is recovered against the old corporation on a debt existing before such transfer, the new corporation cannot object, in an action to collect such judgment out of such assets in its hands, that plaintiff was guilty of laches in suing the old corporation, since all such questions were concluded·in that suit.

**4. SAME—FOLLOWING ASSETS—ESTOPPEL—NOTICE.**

Where a new corporation, organized and managed by the stockholders and officers of an old corporation, receives all the assets of the latter in consideration of stock issued to such stockholders, a creditor of such old corporation is not estopped from following such assets because some stockholders in the new corporation did not know of his claim, since it was not his duty, but that of the officers of the corporation, to give them such information.

Appeal from trial term, Kings county.

Action by Annie E. Wilson, as administratrix with the will annexed of Henry Wilson, deceased, against the Aeolian Company and another. From a judgment in favor of the plaintiff, and from an order amending the complaint at the close of the evidence, defendants appeal. Modified and affirmed.

Argued before GOODRICH, P. J., and WOODWARD, HIRSCHBERG, JENKS, and SEWELL, JJ.

William B. Hornblower (William L. Perkins, on the brief), for appellants.

Herbert T. Ketcham (Joseph E. Owens, on the brief), for respondent.

WOODWARD, J.  In 1882 the Mechanical Orguinette Company, a domestic corporation, was engaged in .manufacturing and selling certain mechanical toys or musical instruments, with its principal offices in the city of New York.  At that time the Orguinette Company was in litigation with certain parties over the question of the ownership of certain rights in patents, and for the purpose of settling this litigation, and placing the business of the corporation upon a safe footing, a compromise was effected, in which one Henry Wilson, as the party of the second part in an agreement entered into, granted a license to all his rights in certain letters patent to the Orguinette Company, provided "that the said party of the first part shall and will pay to the said party of the second part, his executors, administrators, and assigns, at the end of each and every successive period ·of three months from and after the date hereof, and until the full end of the term for which that one of the said above-mentioned patents now having the longest time to run was granted, as a royalty or license fee for the license hereby granted, a sum equal to three per cent. upon the gross wholesale price of all mechanical musical instruments or parts thereof, spools and music paper sold by it, the party of the first part, during each such period, respectively, whether embodying the inventions described in said letters patent or patent rights or not."  The Orguinette Company conducted its· business under the provisions of this license for several years, and up to July, 1887, in

the meantime becoming the owner of certain of the patents involved in the original agreement, but which did not affect the question here involved. In the year last mentioned the stockholders and directors of the Orguinette Company entered into a negotiation looking to the consolidation of the Orguinette Company with the Automatic Music Paper Company of Boston, and to this end a new corporation, known as the Aeolian Company, was organized under the laws of the state of Connecticut, and both of the above corporations were merged into the new corporation; the stock of the latter being issued, share for share, to the stockholders of the Orguinette Company, while the Boston corporation took $60,000 of the stock and $20,000 in cash, the money being realized from the sale of the stock to outside parties. All of the property of the Orguinette Company of every kind and description was transferred to the Aeolian Company, the latter agreeing to pay all of the debts of the former company embraced in a schedule annexed to the papers, but which did not include any reference to the contract existing between Wilson and the Orguinette Company. It is conceded that the Orguinette Company, at the time of this transfer of its property to the Aeolian Company, was solvent; that it had assets available for the payment of its debts exceeding $88,000, and this property was disposed of, not for any consideration moving to the Orguinette Company as a distinct entity, but in consideration of stock issued by the Aeolian Company to the individual stockholders of the Orguinette Company, with the result that the latter was stripped of all its resources. The officers of the Orguinette Company for the most part became the officers and directors of the Aeolian Company, with the addition of some directors from the Boston Company and the new stockholders; and the consolidated company, after an increase of capital stock, has continued to do business since that time. Henry Wilson, party of the second part in the agreement above mentioned, died in 1891, leaving a last will and testament, which was subsequently admitted to probate, and the plaintiff in this action has, since the 30th day of September, 1898, been the administratrix of his estate with the will annexed. Acting in this capacity, the plaintiff brought an action against the Orguinette Company to recover the royalties due the estate of Henry Wilson under the agreement above described, resulting in a judgment, which was duly entered and docketed in the office of the clerk of the county of Kings on the 19th day of December, 1899, for the sum of $25,398.99. A transcript of this judgment was duly filed in the office of the clerk of the county of New York, and an execution issued upon the judgment, which execution was returned unsatisfied, whereupon the present action was brought for the purpose of reaching the assets of the Orguinette Company, which had been transferred to the Aeolian Company, resulting in the judgment appealed from, in which the Aeolian Company is directed to account to and deliver over to a receiver the sum of $88,932.03, with interest from the 25th day of July, 1887, which sum the defendant is adjudged to hold in trust for the benefit of the Orguinette Company and its creditors.

The appellant urges that the Aeolian Company is a distinct legal entity from the Mechanical Orguinette Company, and that the new

company is not liable upon the contracts of the old in the absence of fraud; and this general proposition may be conceded without help-ing the defendants in the present case, for the court at special term has found that there was fraud, and we are convinced that the evi-dence is sufficient to support this finding. Upon the appeal in Wil-son v. Orguinette Co., 57 App. Div. 158; 68 N. Y. Supp. 173, we held as a matter of law (and it was the only question decided in that case) that the defendant was not liable for the royalties upon the sales made of the goods manufactured and put upon the market by the new cor-poration, the Aeolian Company. In other words, we decided that the contract of Wilson with the Mechanical Orguinette Company came to an end when the company was merged in the new corpora-tion; that the Orguinette Company did not retain a corporate ex-istence for the purpose of selling the goods manufactured by a dis-tinct corporate entity, which was endowed with full power to carry on, not only the manufacture, but the sale, of its product, and that Wilson or his representatives could not have a judgment against the defendant in that case for royalties upon the goods manufactured and sold by the Aeolian Company. To this extent we have recognized two distinct legal entities, and, while it may be true that the new corpora-tion, in the absence of fraud, is not liable upon the contracts of the old corporation, we know of no rule of equity which will permit one corporation, organized out of the officers, directors, and stockhold-ers of another, to appropriate to itself all of the assets of the latter, without consideration moving to the corporation, where the rights of third persons are involved. It is not to be doubted that in the case of mere business corporations, in which no considerations of public policy are involved, the stockholders may authorize a transfer of the property to a new company, receiving the stock of such com-pany in payment of the purchase price (Wilson v. Orguinette Co., 57 App. Div. 162, 68 N. Y. Supp. 173, and authorities there cited), but this is subject to the provision that there are no interests involved aside from those of the parties to the agreement. If it operates to deprive others of their property without due process of law,—and a chose in action is property (Statutory Construction Law [chapter 677, Laws 1892] §§ 2, 4; Hein v. Davidson, 96 N. Y. 175, 177, 48 Am. Rep. 612; Bennett v. Bennett, 116 N. Y. 584, 598, 23 N. E. 17, 6 L. R. A. 553),—it cannot receive the sanction of the courts. This distinction has been repeatedly recognized. In Cole v. Iron Co., 133 N. Y. 164, 30 N. E. 847, 28 Am. St. Rep. 615, in a case very similar to the one now before us, the court say:

"The assets of a corporation are a trust fund for the payment of its debts, upon which the creditors have an equitable lien, both as against the stock-holders and all transferees, except those purchasing in good faith and for value."

Again the court say:

"It knew and participated in the illegal purpose to destroy the National Company, to make it utterly insolvent, and to deprive its creditors of the trust fund upon which they had a right to rely, and so they were at liberty to set aside the transfer so far as it barred their remedy, and to enforce their equitable lien upon the property in the hands of the transferee."

In commenting upon this discussion in the case of Hurd v. Laundry Co., 167 N. Y. 89, 96, 60 N. E. 327, 329, which case presents many parallels to the one at bar, the court say:

"The only difference between the transferee in that case and in this is that there it gave up nothing except its promise to pay the indebtedness of the transferror, and here it gave up stock, not to the transferror, but to an individual stockholder, who did not undertake to pay the corporate debts. Neither became a purchaser for value under such circumstances."

In the case at bar the Aeolian Company gave nothing to the transferror. It gave its stock to the individual stockholders of the Orguinette Company, who did not undertake to pay the debts of the corporation, and the transfer, if sanctioned, operates to deprive the creditors of the Orguinette Company of their equitable lien upon the property of the corporation. It results in a fraud upon the creditors of the Orguinette Company; and the Aeolian Company, made up for the most part of the officers of the Orguinette Company, cannot be said to have been purchasers for value, or in good faith, under the circumstances here disclosed. In the Hurd Case, supra, the court, in commenting on the case of Holmes & Griggs Mfg. Co. v. Holmes & Wessell Metal Co., 127 N. Y. 252, 27 N. E. 831, 24 Am. St. Rep. 448, say:,

"The statement in the opinion in that case to the effect that a corporation has power, with the consent of all of its stockholders, to sell its plant to another corporation, and to retire from business, taking payment in the stock of the other corporation, was entirely correct, as qualified by the facts before the court. No rights of creditors intervened. The stockholders had all consented, and the question arose between the parties to a promissory note given for some of the stock. Here we have an entirely different condition of things. The stockholders consent, but the creditor objects. When he demands payment of his claim, he is referred to the empty shell, which is all that is left of the live corporation whose tangible assets constituted a trust fund for the payment of his debt at the time of its creation."

This is the situation in which the plaintiff in this action was placed, and the judgment of the court below seems to be in entire harmony with that in the Hurd Case, except that it does not appear from the opinion that the defendant was called upon to account for more than enough to meet the demands of the creditor, no evidence of other debts being shown to be outstanding against the company whose property was taken. In the case at bar the evidence is reasonably conclusive that there are no other creditors than the plaintiff, and all of the requirements of justice would be met by a modification of the judgment in such form as to secure to the plaintiff the amount of her claim, with interest and the costs, leaving the transfer, in so far as it concerns only the stockholders, in the position in which they had a legal right to make it. The stockholders, saving the rights of creditors, had a perfect right to make the transfer in the manner in which it was made; and, when the rights of this plaintiff have been secured, there would appear to be no good reason why the defendant corporation should be put to any further trouble or expense, particularly as there appear to be persons interested in the welfare of the corporation who were not in any manner involved in the fraud upon the plaintiff's testator.

The appellant urges, however, that, even if there is an equitable right to follow the assets of the Orguinette Company into the hands of the defendants, there is still a complete bar to the recovery in this case on general equitable principles, and that this bar rests upon the grounds of laches, acquiescence, and equitable estoppel. We have examined these propositions with care, and we are unable to discover that they have any application to the case at bar. Henry Wilson, it will be remembered, entered into a written agreement, by which he was to have an income of 3 per cent. upon the gross wholesale price of all of the goods put upon the market by the Mechanical Orguinette Company, in consideration of his grant of a license to the corporation to make use of his patent rights in the manufacture of such instruments. The defendants claim that no payments under this contract were made to Henry Wilson subsequent to 1884, and that there was no liability existing to Henry Wilson upon the transfer of the assets of the Orguinette Company to the Aeolian Company in 1887, or that, if any such liability existed, it was wholly undisclosed and unknown to the stockholders of the Automatic Music Paper Company, who surrendered their stock in that company in exchange for stock in the Aeolian Company, etc.; and that Henry Wilson, by his laches and by the acquiescence of himself and his representatives in the transfer to the new company, waived and lost any rights which he may have had as against the Mechanical Orguinette Company, so far as concerns the assets transferred to the Aeolian Company; and that the latter company stands in the position, on behalf of its stockholders, of a bona fide purchaser for value, without notice; and that plaintiff is estopped from asserting any claim as against such stockholders and as against such corporation at this late day. The answer to these suggestions is that the plaintiff, in an action against the Mechanical Orguinette Company, has been given a judgment for $25,389.99, and this judgment, so long as it stands unreversed and in full force, must be deemed to have disposed of all of the questions which were litigated in that action. Pray v. Hegeman, 98 N. Y. 351, 359. The judgment conclusively establishes the legal right of the plaintiff, and this judgment was entered in 1899. It shows that the Orguinette Company was, at the time of the transfer of the property to the Aeolian Company, indebted to Henry Wilson in the sum of $25,389.99, and the fact that some of the individual stockholders of the latter company did not know of this fact cannot afford a defense to the distinct legal entity, whose executive officers are for the most part the same individuals who were, and who still are, the executive officers of the Mechanical Orguinette Company. The Aeolian Company must be charged with the knowledge of its executive officers; and the very men who made the contract with Henry Wilson, as the executive officers of the Mechanical Orguinette Company, are the men who are to-day urging that the plaintiff is equitably estopped from asserting rights under her judgment, because some individuals may not have had full knowledge of all the facts, and because it is not disclosed by the evidence that her testator gave notice of his rights to a corporation which was in just as good a position to know the facts as he was at the time of the trans-

fer. Plaintiff's testator had entered into an agreement under seal, in which his rights were fully defined. He was not bound to go around inquiring into the affairs of the corporation, nor was he called upon to take any action to prevent a consolidation of the corporation with which he had contracted. He had a right to rely upon his contract, and to assume that the defendants would not act unlawfully to deprive him of his rights; and the corporation having taken the responsibility of stripping the Mechanical Orguinette Company of its property, which, under the laws of this state is held in trust for the payment of the corporate debts (Hurd v. Laundry Co., 167 N. Y. 89, 95, 60 N. E. 327, and authorities there cited), it cannot be heard to say that the plaintiff has lost the right to follow this property into the hands of the corporation, which has had the benefit of the transfer, and to demand the payment of the amount which has been judicially determined to have been due to her testator at the time of the consolidation of the companies, at which time the contract came to an end. The Aeolian Company, as a distinct legal entity, having knowledge of all the facts, cannot gain a standing in a court of equity because of the fact that it may not have disclosed the truth to all of the parties who have been brought into the corporation; and if individuals suffer by reason of the judgment in this action it is due, not to the plaintiff or her testator, but to the failure on the part of the executive officers of the company to disclose the facts, which were peculiarly within their knowledge, and which they were in duty bound to make known to those whose money and property they were bringing into the new corporation. These officers were occupying a fiduciary relation, not alone to the stockholders of the Mechanical Orguinette Company, but to the proposed stockholders of the corporation to which they were elected as the executive officers, and the plaintiff is not to be deprived of her property because of the manner in which the defendant's officers discharged or failed to discharge their duty to the innocent stockholders, whose rights the company now attempts to assert as a shield to itself.

The judgment appealed from should be modified as suggested above, and, as so modified, should be affirmed, with costs. The order amending the pleadings does not seem to be very material, and the modification of the judgment, in effect conforming it to the original pleadings, sufficiently disposes of that question. All concur.

<hr/>