### BLACK v. BOARD OF EDUCATION.

#### (Kings County Court.   June 6, 1904.)

1. SCHOOLS—SALARIES OR SUBORDINATE—POWER OF SCHOOL BOARD—GREATER NEW YORK CHARTER.

    Under Greater New York Charter, § 1069 (Laws 1897, p. 384, c. 378), providing that the school board shall fix and regulate within the proper appropriation the salaries or compensation of clerks and subordinates, where the board employed an attendance officer to enforce the compulsory education law, and fixed his salary at $1,000 for the first year and $1,100 for the second year, commencing September 8, 1901, he was entitled to $1,100 at the end of the first year; and, not having received it till December, 1901, the board was liable for the increase for the three months that it was not paid him, though a resolution of the board subsequently reducing his salary to $1,050 was within their power.

2. SAME—VETERANS' LAW—CONSTRUCTION.

    The veterans' law does not prevent a reduction of the salary of a veteran employed in the public service, when the reduction is reasonable, and does not amount to a removal or forcing of a resignation.

3. SAME—EXPLANATION—GROUNDS FOR REDUCTION.

    A reduction of the salary of an attendance officer employed by the school board of Greater New York from $1,100 to $1,050 per annum is not such a reduction that an opportunity for explanation must be given, or grounds therefor filed with the municipal civil service.

Action by William J. Black against the board of education. Judgment rendered.

Field & Chittenden, for plaintiff.

Jas. D. Bell, Asst. Corp. Counsel, for defendant.

CRANE, J.   This action is brought by the plaintiff, an attendance officer, against the board of education, for salary due him in accordance with the resolution in force at the time of his employment.   He was appointed an attendance officer on September 7, 1900, at which time a resolution of the board of education fixed the salary of such officer at $1,000 for the first year, and an annual increase of $100 per year thereafter till the maximum of $1,200 was reached.   If this resolution had been complied with, the plaintiff would have had $1,100 on September 8, 1901, but he did not receive it till December 1st.   He also would have had on September 8, 1902, $1,200, but, instead, in May, 1902, was reduced by a resolution of the board to $1,050, and not given the increase to $1,200 till April 23, 1903, and he now sues for the difference between the amount he received, and the amount he should have received in accordance with the above-stated resolution.   The main, if not the only, question in this case is, could the board of education, having power to fix the salary of an attendance officer, also reduce it?

The first law providing for attendance officers is chapter 671, p. 1685, of the Laws of 1894, § 7, which is the compulsory education law, and it reads as follows:

"The school authorities of each city shall appoint and shall remove at pleasure one or more attendance officers and shall fix their compensation."

The law was again amended by chapter 606, p. 678, of the Laws of 1896. When the charter of Greater New York (1897) went into effect, it was provided in the chapter dealing with the educational department (section 1116; Laws 1897, p. 404, c. 378) as follows:

"The borough superintendent shall enforce the compulsory education law and shall nominate attendance officers to the school board and shall direct such officers in their duties; he may suspend or discharge any such officer for cause, but such officer shall have the right to appeal to the school board."

The only provision of the charter which touches the compensation of subordinates in the educational department is section 1069, which reads:

"The said board shall fix and regulate within the proper appropriation the salaries or compensation * * * of clerks, subordinates," etc.

As the plaintiff was appointed after the enactment of the above laws, and while they were in force, his rights must necessarily depend upon their provisions, and his employment must have been in accordance therewith. He was in no way a part of the teaching staff, but an officer or employé who was to be nominated by the superintendent, and whose compensation, according to the law of 1894, was to be "fixed" and by the charter of 1897 "fixed and regulated" by the board of education.

Although the resolution fixed the compensation, and provided for $1,000 per year, with an annual increase of $100, it would not have been any different if the resolution had simply fixed $1,200 straight, in so far as it affects the question as to whether the board of education could subsequently reduce the amount of compensation. As I understand the law to be, the compensation of an officer or appointee can be reduced by the body having power to fix or regulate it, unless such change is prohibited by statute or Constitution. See Dillon on Municipal Corporations (4th Ed.) § 231; Murphy v. Board of Education, 87 App. Div. 277, 84 N. Y. Supp. 380; Bannister v. City, 40 Misc. Rep. 408, 82 N. Y. Supp. 244. The fact that the plaintiff could not be removed without cause does not, in my opinion, prevent a reasonable reduction or regulation of his salary. See Bannister's Case.

The plaintiff's counsel insists that the employment of the plaintiff constituted a contract, which neither the board of education, nor even the Legislature, could modify; that the plaintiff is part of the teaching staff. Even if he be such, the Murphy Case, above cited, would indicate that the salary for the future might be modified, unless restricted by statute; but the case of Kinney v. White, 64 App. Div. 340, 72 N. Y. Supp. 91, as well as the requirements of the compulsory education law, would indicate that the attendance officer is no part of the educational staff, and not to be classed in the same category with teachers or principals, and that his appointment or employment is not a contract.

My attention has not been called to any provisions in the charter or the laws or the civil service regulations which prevent this reduction, but in fact the following provisions would seem to in-

dicate that the right to reduce was recognized: Section 56 of the charter of 1897 (Laws 1897, p. 23, c. 378); section 1543 of the charter of 1897 and also section 1543 of the charter of 1901 (Laws 1901, p. 636, c. 466); while the case of Gillespie v. Mayor, Aldermen, etc., of New York, 6 Daly, 286, decides squarely against the plaintiff's contention.

I therefore believe that the board of education had the right not only to fix the plaintiff's salary in the first instance, but to reduce it, as they did do, from $1,100 to $1,050, in May of 1902. When he accepted the position and entered into the employment of the board, it must be assumed that he knew the provisions of the law in accordance with which he was appointed, and the power of the board to fix and regulate his salary.

The complaint alleges that the plaintiff was a veteran. No proof of this was given upon the trial; and, even so, nothing in the veterans' laws prevents a reduction which is reasonable, and not amounting to a removal or forcing of a resignation. Neither was this reduction such that an opportunity for explanation must be given, or grounds therefor filed with the municipal civil service.

Chapters 435 and 436, pp. 894, 895, of the Laws of 1892, which give the mayor, etc., certain powers to fix and regulate salaries, were not necessary to enable the board to make the reduction they did, as, in this case, according to what I have above stated, the board of education had that power before the enactments of these chapters.

My decision in this matter is as follows: That at the time the plaintiff was employed the board had fixed his salary at $1,000 for the first year, and $1,100 for the second year. Commencing September 8, 1901, and, as there was no modification of this resolution of the board, he was entitled to $1,100 at the end of the first year, and, not having received it till December, 1901, he should now recover the sum of $25, his increase for the three months that he was not paid; that the decrease by the board in May, 1902, to $1,050 was within their power, and the plaintiff cannot recover the difference between that sum and what he would have been paid according to the graded increase.

I therefore give judgment for the plaintiff in this case for the sum of $25.