improperly punched. Whether, within the doctrine of the Monnier Case, that makes any difference, we do not need now ·to determine. Said cases relied upon by the respondent are cited in Gillespie v. Brooklyn Heights R. R. Co., 178 N. Y. 347, 70 N. E. 857, 66 L. R. A. 618, 102 Am. St. Rep. 503, but in that part of the opinion in which the learned judge who wrote discussed the rule of damage.

The judgment and order should be reversed.

Judgment and order reversed, and new trial granted, costs to abide the event. All concur, except HOOKER, J., who dissents.

---

(118 App. Div. 130)

### McNEAL v. HAYES MACH. CO., Inc.

(Supreme Court, Appellate Division, First Department. March 15, 1907.)

1. CREDITORS' SUIT—CONDITIONS PRECEDENT—EXHAUSTION OF LEGAL REMEDIES.

A judgment and execution against a company under the name under which it had transacted business for several years, though differing from the name under which it was actually incorporated, where the company answered and did not plead misnomer, was sufficient to entitle the creditor to maintain an equitable suit against an assignee to subject property to the judgment.

2. SAME—PARTIES.

In an action against a second assignee of a corporation to subject property to a judgment against the corporation, where it is not sought to set aside the transfers, the first assignee is not a necessary party.

3. FRAUDULENT CONVEYANCES—FORM OF TRANSFER—ORGANIZATION OF NEW CORPORATION.

Where all the property of a corporation was transferred to an individual for a nominal consideration, and he made no definite inquiry as to the liabilities of the corporation, but transferred the property to a new corporation in consideration of receiving its capital stock, the transfer is constructively fraudulent as to a creditor of the old corporation, who was then prosecuting an action against it.

Appeal from Special Term.

Action by Frank W. McNeal against the Hayes Machine Company, Incorporated. From a judgment dismissing the complaint on the merits, plaintiff appeals. Reversed, and new trial granted.

Argued before PATTERSON, P. J., and LAUGHLIN, HOUGHTON, SCOTT, and LAMBERT, JJ.

Isaac N. Miller, for appellant.
Frank D. Arthur, for respondent.

LAUGHLIN, J. This is an action by a judgment creditor to establish a lien upon property of the judgment debtor in the hands of a second assignee thereof.

On the 28th day of December, 1891, a certificate of incorporation, incorporating the "John J. Hayes Machine Company" as a domestic corporation, was duly filed. The certificate stated that it was to be formed "to manufacture and sell machines of iron and steel, or other metals and to carry on a general machine shop business," and that its business was to be located in Brooklyn. The capital stock aggregated

$10,000, consisting of 100 shares of the par value of $100 each. The corporation duly organized, and thereafter carried on business at Nos. 108 to 118 West street, Brooklyn, under the name "Hayes Machine Company" for many years prior to the year 1903; and the name printed and used on its letter heads, instead of conforming to its certificate of incorporation, was "Hayes Machine Company," and it caused a sign giving the same name to be conspicuously attached to the exterior of its plant. Such were the facts when on the 21st day of April, 1903, the plaintiff delivered to the company at its said plant a "Johnson Automatic Press" of the value of $1,200, to be altered and repaired pursuant to an agreement made between the parties. On the 15th day of June thereafter the plaintiff brought an action in the Supreme Court in the county of New York against the company, in the name under which it was doing business, to recover damages for an alleged breach of the contract to alter and repair said press, and for negligence in repairing the same; it being alleged that the press had been rendered valueless by the defendant. The defendant answered in the name under which it was sued, without pleading a misnomer or suggesting any mistake in its corporate name. The answer was verified by its treasurer on the 25th day of August, 1903, and, although it did not specifically admit that it was a domestic corporation, it admitted the making of the contract alleged in the complaint and averred performance and denied damaging the machine. During the pendency and before the trial of this action, the company, in the name under which it was incorporated, by a bill of sale bearing date April 28, 1904, assigned to one Samuel W. Low, for a consideration specified in the bill of sale as $1, "all of its assets of every kind and nature, including tools, machinery, stock on hand, patterns, and patents, excepting only those accounts receivable, due and payable on or before April 2nd, 1904." The bill of sale was executed by the treasurer who had verified the answer, and by the president, pursuant to a resolution adopted at a meeting of the stockholders at which all stock was represented. The minutes of the meeting of the stockholders showed that the stock of the company was owned as follows: Sixty-four shares by John J. Hayes, president; 12 shares by Alonzo W. Fiske, Jr., treasurer; 12 shares by William H. Hayes, son of the president; and 12 shares by Frederick Knocker. The resolution adopted at the meeting of the stockholders was as follows:

"Whereas, John J. Hayes has assumed the payment of all outstanding accounts. resolved, that all assets of this company, including U. S. patents, but excluding the accounts due to the company, prior to April 3rd, 1904, be sold to Samuel W. Low for one dollar."

At the same meeting a resolution was offered and adopted as follows:

"That this company discontinue business and go into liquidation as soon as possible."

On the 11th day of May thereafter a certificate of incorporation bearing date the 28th day of April—the day the meeting of the stockholders at which the execution of the bill of sale was authorized was held—was duly filed, incorporating the "Hayes Machine Company, Incorporated" as a domestic corporation. The certificate of incorporation showed that it was incorporated "to manufacture and sell special

and general machinery and to do a general machine shop business."
The incorporators were said Low and one Frank D. Arthur and said
Fiske, who was treasurer of the old company, and they were named
as the directors for the first year. The capital stock of the company
was to consist of 200 shares of the par value of $100 each. On the
day following the incorporation of the new company Low executed
a bill of sale to it of "all the assets and patents that I acquired from the
John J. Hayes Machine Company and from John J. Hayes individu-
ally, by two certain agreements dated April 27th, 1904"; the con-
sideration named in the bill of sale being the entire capital stock of
the new company to be issued, 198 shares to said Low and one share
each to said Fiske and Arthur, and it was issued accordingly. The
record does not show what if any, property was transferred to Low
by Hayes individually. Low became president, Fiske treasurer, and
said William H. Hayes, son of the president of the old company, secre-
tary, and thus, with the exception of the new president, the officers
of the new company were the same as those of the old. The new
corporation used the name "Hayes Machine Company" in large type
on its letter head, followed by the letters "Inc." in small type, and
continued the same sign upon the building and the same superin-
tendent, whose name also appeared upon the letter head, and took
charge of the plant of the old company and continued the business
at the same place. It does not appear that any notice was sent by the
old company or by the new to the customers of the old company of
any change in the ownership or management of the business, nor is
there any evidence of any facts which would give notice to the cus-
tomers or to people doing business with the company of such change.
There is no evidence that the old company transacted any business
after the execution of the bill of sale and the adoption of the resolu-
tion to liquidate its business. Thereafter, and on the 26th day of
June, 1905, the action begun by the plaintiff in 1903 against the "Hayes
Machine Company" came on for trial. The defendant failed to
appear, and plaintiff took judgment for $1,100, together with interest
and costs, being the full amount of his claim, less apparently $100,
the contract price of the repairs to be made on the press. Judgment
was duly entered on the 28th day of June, 1905, and a transcript
thereof filed in the office of the clerk of the county of Kings the next
day, and execution duly issued thereon to the sheriff of Kings county,
where the judgment debtor resided, was returned unsatisfied prior
to the commencement of this action. In this action the old company
defaulted, but the new company appeared and defended. It was
shown: That the automatic press which plaintiff delivered to the old
company for repairs still remained at the plant, and that shortly prior to
the 1st of May, 1904, which would be about the time the old company
authorized the bill of sale to Low, the treasurer of the old company,
in the presence of its secretary, informed a representative of a mer-
cantile agency who called with a view to giving the company a rating
that the assets of the company were about $20,000, and that its lia-
bilities were $3,000, or $4,000, and that on the 10th day of January
thereafter he again called and interviewed Low, the president of the
new company, for the purpose of giving the new company a rating,

and was informed that it had succeeded the Hayes Machine Company, which on May 1, 1904, had assets aggregating $20,000, which he itemized as follows:

"Tools and machinery, $7,045; stock finished, $4,112.69; patterns, $3,842.31; patents, $5,000."

And that the assets of the new company were the same, except that it had added tools of the value of $800 since May 1, 1904, and he claimed that there were no liabilities. The defendant showed that there was no corporation by the name of "Hayes Machine Company," and Low testified that he purchased the assets from the John J. Hayes Machine Company, and had no knowledge of plaintiff's claim until the sheriff came with the execution against the Hayes Machine Company in August, 1905; that he paid $10,000 for the assets, $5,000 in cash to John J. Hayes and $5,000 in notes payable to the order of John J. Hayes, individually; that he received an inventory of the property and was informed by Fiske, the treasurer of the company, that the press which plaintiff delivered to the company did not belong to the company, but that he took everything else except the book accounts; that he received no statement of the indebtedness of the company, but presumed that it had liabilities. Frank D. Arthur, one of the incorporators of the new company, testified that he represented Low in all these transactions; that at the time Low purchased the assets of the old company he inquired of its treasurer about its indebtedness, and was informed that it only owed some small debts which would be paid, and whether there were actions pending against it, and was informed that there was but one action pending, and in that the company was plaintiff. It does not appear that Low asked for or obtained a statement of the liabilities of the old company, or inquired with respect to the circumstances under which the plaintiff's press was left at the plant, or why it still remained there. The trial court found and decided that both Low and the new company were innocent purchasers for value, and took the assets free and clear of any liens of creditors of the old company.

The respondent contends that the plaintiff had not exhausted his remedy against the old company, and therefore could not maintain the action. The basis of this claim is that plaintiff did not show that he obtained a judgment against the old company and that execution had been duly issued and returned unsatisfied thereon prior to the commencement of the action. The respondent invokes the rule, well established by authority, that equitable assets can only be reached after the remedy at law has been exhausted, which can only be shown by the return of an execution unsatisfied. Harvey v. Brisbin, 143 N. Y. 151, 38 N. E. 108; Kerr v. Dildine, 60 Hun, 316, 15 N. Y. Supp. 58; Adee v. Bigler, 81 N. Y. 349; Beardsley Scythe Co. v. Foster, 36 N. Y. 561; Dunlevy v. Tallmadge, 32 N. Y. 457; McCullogh v. Colby, 5 Bosw. 477. This principle is so well established that it is not open to question. It does not follow, however, that the judgment was not a judgment against the corporation merely because there was an error in the corporate name, nor that the execution should not be deemed an execution against the corporation. If the defendant had defaulted

in appearing or answering, then the plaintiff would justly be held to strict practice, and the judgment could only be entered and execution issued against the party defendant designated in the summons and satisfied out of its property (Schoellkopf v. Ohmeis, 11 Misc. Rep. 253, 32 N. Y. Supp. 731; Fischer v. Hatherington, 11 Misc. Rep. 575, 32 N. Y. Supp. 795; Durst v. Ernst, 45 Misc. Rep. 627, 91 N. Y. Supp. 13; Produce Bank v. Morton et al., 67 N. Y. 199); but where, as here, the defendant appeared and answered without pleading the misnomer in abatement or questioning that the name by which it was designated in the summons was its correct corporate name, it will be deemed estopped from thereafter denying that the name under which it was sued is its correct corporate name (Freeman on Judgments [2d Ed.] § 154; First Nat. Bank v. Jaggers, 31 Md. 38, 100 Am. Dec. 53; Waterbury v. Mather, 16 Wend. 611; Tasker v. Wallace, 6 Daly, 364), and, in fact, the judgment in such circumstances is an adjudication as to the name of the defendant (Waterbury v. Mather, supra). It is to be borne in mind that the name by which the old company was sued was the name which it had assumed and in which it had transacted its business and by which it was known. It is well settled that, where a party is known by different names, he may be sued under either without an alias. Isaacs v. Mintz, 16 Daly, 468, 12 N. Y. Supp. 276. I see no room for distinction in this regard between a corporation and an individual. I am of opinion, therefore, that the judgment should be deemed to be a judgment against the John J. Hayes Machine Company, that the execution should be deemed to have been issued against that company, and that it should be presumed, from the return of the execution unsatisfied, that the sheriff was unable to find any property of that company upon which to levy the execution. It is the duty of the sheriff in executing an execution to act under the direction of the attorney for the plaintiff. Root v. Wagner, 30 N. Y. 9, 86 Am. Dec. 348. It should be presumed that the attorney for the plaintiff knew where the plant and property of the company were. This also appears by the fact that a transcript of the judgment was filed in Kings county, where the company had been doing business, and that an effort was made by the sheriff at the former plant of the company to find property belonging to it, for it appears by the testimony of Low that the sheriff came there with the execution. According to the evidence, he must have found the new company in possession and presumably claiming all the property. I am of opinion, therefore, that the plaintiff has a standing to maintain the action.

It is further claimed that Low individually is a necessary party to the action, but I am of opinion that this contention is also erroneous. It is not sought in this action to set aside the respective transfers of the property from the old company to Low and from him to the new company and restore title to the old company. The plaintiff merely claims an equitable lien upon the assets of the property of the old company now in the possession of the new company to the extent of the amount of his judgment, interest, and costs. He does not ask judgment disturbing its title, excepting to the extent of having this lien declared against and satisfied out of the property. The title and

possession of the property as it now is in the new company is recognized; but it is to be subjected to this lien the same as if the new company had executed a mortgage thereon therefor. In such case the intermediate transferee might be a proper, but is not a necessary, party. Cook v. Lake, 50 App. Div. 92, 63 N. Y. Supp. 818; Bierschenk v. King, 38 App. Div. 360, 56 N. Y. Supp. 696.

I am of opinion that the finding of the trial court that Low was an innocent purchaser for value is against the weight of evidence; and that in any view of the evidence, even though there was no actual fraud, the transfer of the property constituted a constructive fraud upon the creditors of the company, and is void as against them. It is not necessary to decide whether the evidence would have warranted a finding of actual fraud on the part of Low, who is in reality the new company, for, in any view of the evidence, there was constructive fraud, which is sufficient to subject the property transferred to the lien of plaintiff's judgment. Low knew that the old company was going out of business, for he took all of its property, with the exception of some pastdue accounts, and he took possession of its plant, and the resolution of the company, with knowledge of which he is, in the circumstances, chargeable, showed that it intended to discontinue business and terminate its career. The evidence showed that he stated that the value of the property on the 1st of May, 1904, four days after he purchased it, without any evidence of a change of circumstances, was twice the consideration paid by him therefor. At most, he blindly assumed that the president of the old company to whom he paid the entire consideration, excepting the nominal consideration of $1, and who owned less than two-thirds of the stock of the old company, was to pay its debts, and he made no definite inquiry with respect to the extent of its indebtedness, or as to who its creditors were. His attention was drawn to the plaintiff's press, and it was specifically stated that title to that did not pass to him under the bill of sale, and, so far as appears, he made no inquiry to ascertain what, if any, liability the company had incurred by reason of the presence of that property. He might have ascertained, if he had inquired, that the action was pending which subsequently resulted in the judgment to enforce which this action is brought. The transfer to Low and the organization of the new company were part of a preconceived plan. The form in which the transfer was made. can give the new company no greater protection than if the property had been transferred directly to it and the consideration paid as it was paid to Low, namely, by the issue of the entire capital stock. The treasurer of the old company, who became one of the incorporators of the new, presumably under an arrangement made with Low at the time of the original negotiations, had full knowledge of the facts. No explanation is offered for changing the name of the corporation, or as to why Low could not have purchased all of its capital stock and continued the business without forming a new company. In the circumstances, I deem it quite clear that the new company took title subject to the claims of creditors of the old company. It is a well-settled rule of law that the creditors of a corporation have an equitable lien upon

its assets for the payment of their claims. Wilson v. Æolian Co., 64 App. Div. 337, 72 N. Y. Supp. 150, affirmed 170 N. Y. 618, 63 N. E. 1123; Cole v. M. I. Co. et al., 133 N. Y. 164, 30 N. E. 847, 28 Am. St. Rep. 615; Bartlett v. Drew, 57 N. Y. 587; Hurd v. N. Y. C. Steam Laundry Co., 167 N. Y. 89, 60 N. E. 327; People v. Ballard, 134 N. Y. 269, 32 N. E. 54, 17 L. R. A. 737. This was not a purchase of property from a corporation in the ordinary course of business. The purchaser knew that the effect of the transfer was to wind up the business of the old corporation without conforming to the statutory provisions applicable thereto, which would have secured the appropriation of its property to the payment of the claims of its creditors. Assuming that Low and the other stockholder of the new corporation who was not connected with the old were innocent, and that they believed that the president of the old company would use the consideration paid by Low in paying off the claims of creditors of the old company, yet of this they took the risk. They could have protected themselves by an inquiry with respect to the claims, and by seeing that the purchase price, had it been the fair value of the property, was applied in settlement of the claims of creditors; but, instead of doing this, they took all of the property with the exception of these pastdue accounts, the amount or value of which does not appear, and left the company stripped of its assets, without other than a nominal consideration paid to it and the creditors without remedy, except to follow this property in their hands. This in law clearly constituted a constructive fraud against creditors, and subjects the property in the hands of the new company to a judgment of the court declaring and enforcing an equitable lien of the creditors of the old company thereon, and subjects the new company to liability to account for the property to the extent necessary to satisfy the claims of the creditors of the old company. Wilson v. Æolian Co., supra; Cole v. M. I. Co. et al., supra; Bartlett v. Drew, supra; Hurd v. N. Y. C. Steam Laundry Co., supra; People v. Ballard, supra; Brum v. Merchants' Mutual Ins. Co. (C. C.) 16 Fed. 141.

It follows, therefore, that the judgment should be reversed and a new trial granted, with costs to appellant to abide the event.

PATTERSON, P. J., and HOUGHTON and LAMBERT, JJ., concur. SCOTT, J., concurs in result.