ELERY J. WILLEY, Plaintiff, *v.* DIEPRESS COMPANY, INC., Defendant.

Supreme Court, Madison County, August 24, 1935.

*Cole & Cole* [*Pierre W. Evans* on the brief], for the plaintiff.
*Smith, Seubert & Dolan*, for the defendant.

JOSEPH D. SENN, Official Referee. From about the year 1918 to August 1, 1928, the Diepress Company, Inc., a domestic corporation, with office and place of business at Cazenovia, N. Y., was engaged in the manufacture and sale of milk-bottle caps. The plaintiff was a salesman in their employ and had been from about the year 1924.

There came a time when the business suffered in competition with other bottle caps having improvements not possessed by the Diepress Company.

The Plympton Paper Products Corporation, located at Brewster, N. Y., was engaged in the same business and was making a milk-bottle cap called the " Pullrite," which had a small wire attached to aid in lifting it from the bottle. After negotiations with the Plympton people, conducted to a considerable extent through the plaintiff, it was decided to purchase the Plympton interests, patents, etc., and merge the two corporations in one by incorporating a new company to be known as the Diepress Company, Inc., the same name as the old, practically a reincorporation of the Diepress Company, Inc. To avoid confusion and for brevity, I will hereafter refer to the companies as the " old " and the " new."

On July 20, 1928, the directors of the old company, at a meeting duly held, passed a resolution to sell and convey to the " Diepress Company, Inc.," a domestic corporation hereafter to be formed, all its property, rights, privileges and franchises, cash on hand, and accounts receivable excepted, for the sum of $205,000, to be paid by the delivery to the old corporation of 300 shares of class A preferred stock, 1,700 shares of class B preferred stock, each of the par value of $100, and 1,000 shares of common stock of no par value.

Three hundred shares of the class A preferred stock of the new corporation were to be delivered to the holders of the preferred stock of the old corporation, and a sufficient amount of class B preferred stock of the new corporation at the rate of $100 a share was to be transferred to Henry Burden and James A. Loyster, heavy creditors of the old company, to pay the indebtedness to them.

The formal statutory steps necessary to the dissolution of the old company and the incorporation of the new were taken. The new corporation was incorporated on July 26, 1928, and the transfer of the property of the old company took place on August 1, 1928.

In the meantime all the personal property of the Plympton Paper Products Corporation, except cash and accounts receivable, had been acquired by the new company for $157,000, being $68,000 in cash, which was advanced by Henry Burden, and the balance in stock of the new company.

The stock issued by the new company to the old company, except what was used to pay creditors, was distributed among the stockholders of the latter in proportion to their interests as such. All the creditors of the old company, except the plaintiff, have been paid.

The reservation by the old company of the cash and accounts receivable was no doubt in attempted compliance with subdivision 9 of section 105 of the Stock Corporation Law; that is, it was probably believed to be an adequate provision for its liabilities and obligations. There was no cash on hand and the book value of the accounts receivable was $26,943.45.

All the common stock of the old corporation was held by Paul Williams and wife and James A. Loyster and wife. Williams was president of the old company and became secretary of the new. Loyster was an officer of the old company and was made president of the new. These two appear to have been the only stockholders of the old company who became directors of the new. In addition, Mr. Henry Burden, a man of means residing at Cazenovia, who was said to have been a kind of godfather to the old company, that is, he did much toward financing it without being a stockholder, became a stockholder, officer and director in the new company, and some of the former stockholders of the Plympton Corporation also came in as stockholders, officers and directors.

After the dissolution, an account known as the " dissolution account " was opened and was in charge of Paul H. Williams and James A. Loyster, as trustees, to pay the debts of the old corporation. In addition to amounts received from the accounts receivable, other sums were added so that nearly $63,000 passed through the dissolution account. The liabilities of the old corporation, aside from stock liabilities, at that time amounted to $244,556.03. All these, except sums due plaintiff, were paid. The dissolution account became inactive on October 27, 1930, with a balance of $6.80. In the meantime $1,407.56 had been paid upon plaintiff's claim which at the time of the dissolution amounted to $5,159.63 for unpaid salary due him as salesman. On April 12, 1933, he sued the old company for the balance due him, and on May 8, 1933, judgment in his favor for $4,812.15 was docketed in Madison county. Execution having been issued and returned unsatisfied, he brought this action against the new company to have the transfer of the assets of the old company to it set aside as to him and said assets, or so much thereof as may be necessary to satisfy his judgments, sold.

I do not find that there was any fraud in the proceedings for the dissolution of the old corporation and the incorporation of the new and the transfer of assets as above detailed. All was done to pro-

mote the business and interests of the old corporation and to save it from failure.

If plaintiff is to succeed, it must be on the ground that there was a failure to comply with the statutory requirement of making adequate provision for the payment of the old company's obligations. If it turned out to be inadequate, the fact that it was believed to be sufficient would not save the question. (*Georgiades* v. *Sunset Fruit Products Corp.*, 237 App. Div. 357, 365, citing *Singer* v. *Aquitania Realty Corp.*, 137 Misc. 295, 296; affd., 232 App. Div. 744.)

It is elementary that in statutory proceedings the statute must be strictly pursued, especially in regard to provisions which are designed to safeguard substantial rights. The statute in question was but an enactment of a well-settled principle of law.

" It is a very plain proposition that the stock and property of every corporation is to be regarded as a trust fund for the payment of its debts, and its creditors have a lien and the right to priority of payment over any stockholder." (*Bartlett* v. *Drew*, 57 N. Y. 587, 589, cited in *Darcy* v. *Brooklyn & N. Y. Ferry Co.*, 196 id. 99, 102.)

Several grounds of defense are urged:

1. That plaintiff knew of all that was done and acquiesced in it.

2. That he is guilty of laches in having waited so long before commencing suit or bringing his claim to the attention of the officers of the new company.

3. That the provision for creditors was in fact adequate, and that the failure to pay plaintiff in full or *pro rata* with other creditors was due to the mismanagement of the trustees and especially the culpability of Williams. It is set forth that plaintiff's claim was only about three per cent of the total debts, that ninety-seven per cent was paid, and that if the payments had been *pro rata* plaintiff would have received all but about $150 of his claim.

Especially in regard to Williams, who received $13,300 in preferred stock of the new company or 133 shares in payment of his alleged claim of $13,300, it is urged that his true claim was only for $5,386, being $4,607.80 loans to the company and $778.20 back salary, which showed on the books of the old company at the time of the dissolution; that the balance of $7,914 did not show on the books and was made up of notes of the company held by Williams which were barred by the Statute of Limitations and which neither he nor his fellow trustee had the right to waive. (*Butler* v. *Johnson*, 111 N. Y. 204.)

Considering that the plaintiff was not a stockholder or officer of any of the corporations named, but only an employee and auditor, I do not see how his acquiescence in the proceedings mentioned could affect his rights or estop him in the assertion of them. Neither

did he have any control over the dissolution account and should not be penalized for the alleged dereliction of the dissolution trustees.

His delay in suing can be explained on two grounds. He was continued in his job as salesman until the end of 1930. To have started legal proceedings during that time might have jeopardized his position with the new company. Mr. Burden's promise to pay him or see that he was paid, while probably not binding on the new company, still kept alive his hopes that he would be paid in full. Under the circumstances, I do not think that his delay constituted laches. The evidence is not conclusive that Paul Williams was paid an " outlawed " debt out of the dissolution account funds. If he did, there is no evidence that plaintiff knew it; neither could he have prevented it if he did.

On the other hand, the trustees necessarily acted for both the old company and the new. The latter, especially, had an interest in seeing that the statutory provision to adequately provide for the payment of the old company's obligations was carried out, for the validity of its incorporation depended on it. With such a vital interest at stake, how can it be said that its directors had no control over the trustees?

At any rate, the property still remains as a trust subject to the payment of all valid obligations. The plaintiff not having been paid, he is entitled to the relief demanded in the complaint.

I have not overlooked defendant's contention that the portion of plaintiff's judgment which represented interest after the dissolution should be deducted and that the assets having been only seventy per cent of the liabilities, plaintiff's lien, if he is entitled to any, should be, on the basis suggested, for the sum of $2,204.18 and no more. Assuming the correctness of the figures submitted, the judgment is conclusive as to the amount of plaintiff's claim and establishes the amount due him. (*Wilson* v. *Æolian Co.*, 64 App. Div. 337; affd., 170 N. Y. 618.) Besides, the proceedings were not on the assumption of insolvency; hence the laws relating to insolvency, receivership, etc., have no application. The dissolution was without judicial proceedings and the dissolutions contemplated by the statute are those of solvent corporations. (La Fetra, J., in *Dwyer* v. *Harlem, etc.*, N. Y. L. J. Oct. 24, 1918, cited in 2 White Corp. 736.)

Submit findings for plaintiff.