CARL LUEDECKE, Appellee, v. THE DES MOINES CABINET CO., THE WELLS & ANTES UNDERTAKING CO., and F. L. HARTUNG, Appellants.

**Corporations:** PURCHASE OF ONE BY ANOTHER: LIABILITY FOR DEBTS. 1 Before a purchasing corporation can be held liable for the debts of another which it purchases, it must be shown either that there was an agreement to pay the same, or the facts must warrant a finding that there was a consolidation of the two corporations, or that the purchasing corporation was a mere continuance of the one selling, or that the transaction was a fraud.

**Corporations:** RIGHTS OF CREDITORS: EQUITABLE LIENS. While the 2 creditors of a corporation do not have a specific lien upon its property to secure their claims, and the property is not to be regarded as a direct trust for the payment of the corporation debts, still creditors may have an equitable right or lien established upon the assets of the corporation, unless the property has passed into the hands of a *bona fide* purchaser.

**Same:** DIVERSION OF ASSETS. The statutes prohibit a diversion of cor-3 porate funds to any purpose other than those designated in its articles; and by the common law stockholders cannot divide the corporate assets among themselves without first paying the corporate debts.

**Same:** SALE OF CORPORATE PROPERTY: *bona fide* PURCHASER: CREDITOR'S
4 LIENS. A creditor of a corporation may follow its assets into
the hands of one not a good faith purchaser in due course of
business, so that a corporation purchasing the assets of another
corporation after the institution of a creditor's suit against it
on an unliquidated demand, issuing its stock in payment there-
for, not to the corporation, but to an individual stockholder of the
same, is not a *bona fide* purchaser, and takes the property charged
with the creditor's right to an equitable lien thereon; but the
purchasing corporation does not become personally liable to the
creditor by virtue of the transaction.

*Appeal from Polk District Court.*—HON. ALFRED H.
McVEY, Judge.

FRIDAY, NOVEMBER 20, 1908.

THIS is a proceeding whereby plaintiff, a judgment
creditor of a corporation known as the "Des Moines Cabi-
net Company," seeks to recover the amount thereof from
the Wells & Antes Undertaking Company, and to estab-
lish a lien to the amount thereof against certain property
conveyed by the cabinet company to the undertaking com-
pany. The trial court granted the relief prayed, and the
defendants Wells & Antes Company and Des Moines Cabinet
Company appeal.—*Modified* and *affirmed.*

*J. D. Wallingford* and *Clinton L. Nourse,* for appel-
lants.

*George Wambach,* for appellee.

DEEMER, J.—Plaintiff recovered judgment against the
Des Moines Cabinet Company December 31, 1900, in the
sum of $325 for breach of a contract of employment. The
cabinet company was a corporation organized under the
laws of this State, and at all times material to our inquiry
the entire stock of the corporation was owned by defendant

Hartung. On the 15th day of August, 1900, and after plaintiff had commenced his suit against the cabinet company, Hartung, as president of that company, sold and transferred to the Wells & Antes Undertaking Company, also an Iowa corporation, all the assets of the cabinet company, the consideration named being $3,500. Instead of cash Hartung individually received thirty-five shares of.the stock of the undertaking company, which he immediately hypothecated for his private account. Plaintiff, after obtaining his judgment, caused execution to issue against the cabinet company, which was returned no property found. He thereupon brought this suit in equity, alleging that when the undertaking company purchased the property, it knew of plaintiff's claim, and with intent to hinder, delay and defraud him it took possession of all the assets of the cabinet company, and converted the same to its own use without other consideration than the issuance of its own stock in payment therefor; that by reason of the transfer the undertaking company became possessed of all of the assets of the cabinet company, leaving nothing for the payment of its debts.

Upon the trial plaintiff withdrew all charges of fraud and deceit, "except such fraud as may arise from the transaction between the parties at law." As we understand it, plaintiff relies upon a single proposition in

1. CORPORATIONS: purchase of one by another: liability for debts.

this case, and this is that, where one corporation transfers all its assets to another corporation, and thus practically ceases to exist without having paid its debts, the purchasing corporation takes the property subject to an equitable lien or charge in favor of the creditors of the selling corporation, and this without reference to the question of actual fraud. If the affirmative of this proposition be held, it must be upon the theory that the assets of a corporation are in the nature of a trust fund for the payment of its debts, and that a sale of the entire property works a dissolution of

the selling corporation, and justifies an accounting at the suit of creditors. Plaintiff also claims that under the facts disclosed by this record he became entitled to a judgment against the undertaking company and its successor in interest for the amount of the judgment he obtained against the cabinet company. The trial court was evidently of this opinion, for it rendered judgment against all the defendants personally, and also established a lien to the amount of the judgment against the property of the cabinet company sold by Hartung to the undertaking company, and directed its sale under special execution. Appellants challenge that part of the decree rendering personal judgment against the undertaking company, the successor to the assets of the cabinet company, and we are constrained to sustain them in this position. In order to render the purchasing company personally liable for the debts of the selling corporation, it must appear that (a) there be an agreement to assume such debts; (b) the circumstances surrounding the transaction must warrant a finding that there was a consolidation of the two corporations; or (c) that the purchasing corporation was a mere continuation of the selling corporation; or (d) that the transaction was fraudulent in fact. *Baker v. Hall,* 76 Neb. 88 (107 N. W. 117, 111 N. W. 130, 113 N. W. 267); *Sharples v. Harding* (Neb.), 111 N. W. 783 (11 L. R. A. (N. S.) 863); *Allen v. Church,* 138 Mich. 541 (102 N. W. 810); *Chase v. Telephone Co.,* 121 Mich. 631 (80 N. W. 717); *Ewing v. Composite Co.,* 169 Mass. 72 (47 N. E. 241), and other like cases. None of these things appear in this case, and in our opinion the court was in error in rendering a personal judgment against the purchasing corporation.

Little is said specifically of that part of the decree which establishes plaintiff's judgment against the cabinet company as a lien upon the property purchased by the undertaking company, although we assume that appellants' counsel are adopting the same theories with refer-

ence thereto that they urge against the personal judgment.

2. CORPORATIONS: rights of creditors: equitable liens. The cases they cite do not go to this extent, however, although there are some which sustain the proposition that the purchasing corporation takes the property free from all debts or claims against the selling one. A great many authorities in this country hold to the doctrine that, if one corporation transfers all its assets to another, and thus practically ceases to exist without having paid its debts, the purchasing corporation takes the property subject to an equitable lien or charge in favor of the creditors of the selling corporation. Some courts announce a modified doctrine declaring that the principle has no application to a sale made in the usual course of business, nor to a *bona fide* sale for a full consideration in cash or its equivalent. Although announcing in general terms the first proposition, we are probably committed to the modified one in *Warfield v. Marshall Canning Co.,* 72 Iowa, 666. It has been broadly asserted by courts of the highest standing that the capital stock of a corporation is a fund for the payment of its debts. "It is a trust fund of which the directors are trustees. . . . The capital stock paid in, and promised to be paid in, is a fund which the trustees can not squander or give away." *Upton v. Tribilcock,* 91 U. S. 45 (23 L. Ed. 203). This modern or so-called American doctrine has never been recognized in England, nor does it exist at common law; and, while at one time quite generally adopted in this country, it is now believed to be unsupported to its full extent by any considerable number of courts. Indeed the court which first announced it has largely receded from its former position, and now says that no trust in its true sense exists; that all that was intended by the previous expressions was to announce the existence of an equitable right, which will be enforced whenever a court of equity, at the instance of a proper party, has taken possession of its assets. "It is never understood that there is a specific lien or a direct

trust." See *Hollins v. Iron Co.,* 150 U. S. 371 (14 Sup. Ct. 127, 37 L. Ed. 1113). We have recently gone over this matter in the case of *State Trust Co. v. Turner,* 111 Iowa, 664, and have repudiated the trust-fund doctrine as broadly announced in some of the earlier cases in this country. The creditors of a corporation in a proper case have an equitable right or lien upon the assets of a corporation. But a corporation, like a partnership, may transfer its property in good faith to a *bona fide* purchaser, and such purchaser will hold it free from the debts of the corporation.

The statutes of this State, however, prohibit the diversion of corporate funds to other objects than those mentioned in its articles (Code, section 1621), and it is a well-settled rule of the common law that the 3. SAME: diversion of assets. stockholders of a corporation can not divide its property or assets among themselves without first paying the corporate debts. The rules thus announced have been stated very clearly in *McIver v. Young Hardware Co.,* 144 N. C. 478 (57 S. E. 169, 119 Am. St. Rep. 970); *O'Bear Jewelry Co. v. Volfer,* 106 Ala. 205 (17 South. 525, 28 L. R. A. 707, 54 Am. St. Rep. 31); *Hospes v. Car Co.,* 48 Minn. 174 (50 N. W. 1117, 15 L. R. A. 470, 31 Am. St. Rep. 637); *Cole v. Iron Co.,* 133 N. Y. 164 (30 N. E. 847, 28 Am. St. Rep. 615); *Bartlett v. Drew,* 57 N. Y. 587; Morawetz on Corporations, section 791.

The instant case seems to call for a rather full discussion of the so-called "trust-fund" doctrine, and we have perhaps said enough to indicate our view of the matter. We may conclude this branch of the inquiry by quoting the following terse statement from *Railroad Co. v. Howard,* 7 Wall. (U. S.) 409 (19 L. Ed. 117): "Equity regards the property of a corporation as held in trust for the payment of the debts of the corporation, and recognizes the right of creditors to pursue it into whosoever's possession it

may be transferred, unless it has passed into the hands of a *bona fide* purchaser." See, also, *C., M. & St. P. R. R. v. Third National Bank,* 134 U. S. 276 (10 Sup. Ct. 550, 33 L. Ed. 900); *Vance v. McNobb Coal & Coke Co.,* 92 Tenn. 47 (20 S. W. 424).

Going now to the facts of the case, it will be observed that the exact point for decision is a narrow one. Plaintiff was a creditor of the Des Moines Cabinet Company, holding an unliquidated demand against it, which was in suit when the cabinet company sold its assets to the undertaking company.

4. SAME: sale of corporate property: *bona fide* purchaser: creditors liens.

The undertaking company acquired practically all of the assets of the cabinet company by purchase, and it issued in payment therefor certain of its shares of stock, not to the cabinet company for proper distribution, but to Hartung individually, who immediately pledged the same as security for his individual debts, leaving nothing from which plaintiff could collect his judgment, which he obtained in due course. The charge of actual fraud—that is, of intent to hinder, delay and defraud plaintiff in the collection of his claim—has been withdrawn, and reliance is placed upon the general doctrine that plaintiff, under this brief recitation of the facts, is entitled in equity to enforce his judgment against the property of the cabinet company which was received, and is still held, by the undertaking company, on the theory that he has an equitable lien upon this property, or that the facts show a case of legal fraud entitling him to proceed against the property. We do not recognize the trust-fund doctrine to the extent that it has obtained in some of the courts; but are of opinion that corporate creditors are entitled in equity to the payment of their debts before any distribution of corporate property is made among the stockholders, and recognize the right of a creditor of a corporation to follow its assets or property into the hands of anyone who is not a good-faith holder in the ordinary course of business.

We must also enforce our statute which prohibits the diversion of corporate funds and the payment of dividends not earned. So that, in its last analysis, the question here is. Is the undertaking company and its successor in interest such a *bona fide* purchaser as that it may hold the assets of the cabinet company free from the debts of that corporation? The answer to this must be in the negative, and for these among other reasons: It issued to Hartung individually whatever of consideration it paid for the assets of the cabinet company, knowing before it finally issued its stock that it was being used by Hartung for his own private ends. It did not buy the property in the usual course of business. On the contrary, it took it over, and issued its own stock in payment therefor, which did not go to the corporation from which it purchased. That it did not take the property free from liability for corporate debts under such circumstances is held by practically all of the cases which we have been able to find or which have been cited by counsel. In Thompson on Corporations, section 6547, it is said: "Where one corporation transfers all its assets to another corporation, and thus practically ceases to exist, without having paid its debts, the purchasing corporation takes the property subject to an equitable lien or charge in favor of the creditors of the selling corporation. . . . And while the right to follow a trust fund into the hands of a third party depends upon the answer to the inquiry whether such third party took it with knowledge of the trust, the case being one where the trustee who transferred it to him had a power of disposition, yet in such a case as we are supposing, where one corporation transfers all its assets to another, not in the ordinary course of business, the very circumstances of the case imply full knowledge, on the part of the transferee, of all the facts necessary to charge the property in his hands with the debts of the transferrer, and the case is still clearer where the corporation receiving the transfer agrees to assume and pay the debts of the corpora-

tion making it, in which case, under the principles of equity, and under the modern Codes of Procedure, the creditors of the transferring corporation may maintain a direct action against the transferee corporation upon the contract, as a contract made for their benefit." See, also, Cook on Corporations (3d Ed.) sections 669, 670; *Ex parte Savings Bank,* 73 S. C. 393 (53 S. E. 614, 5 L. R. A. (N. S.) 520), and note; *Allen v. Church, supra; McIver v. Young Co.,* 144 N. C. 478 (57 S. E. 169, 119 Am. St. Rep. 970); *Couse v. Columbia Co.* (N. J. Ct.), 33 Atl. 297; *Owen v. Arvis,* 26 N. J. Law, 22; *Hibernia Ins. Co. v. Transportation Co.* (C. C.), 13 Fed. 516; *Hurd v. Lumber Co.,* 167 N. Y. 89 (60 N. E. 327); *Cole v. Iron Co.,* 133 N. Y. 164 (30 N. E. 847, 28 Am. St. Rep. 615); *Grenell v. Gas Co.* 112 Mich. 70 (70 N. W. 413); *Berry v. Railroad Co.,* 52 Kan. 774 (36 Pac. 724, 39 Am. St. Rep. 381); *Vance v. Coke Co.,* 92 Tenn. 47 (20 S. W. 424). The theory under which these cases proceed is that the purchasing corporation is not a good-faith buyer for value, in that the transaction is an unusual one; and the purchasing company is held to a knowledge that the property it buys is subject to the payment of corporate debts, and the buyer is not a *bona fide* purchaser for value. See, also, *Rogers v. Land Co.,* 134 N. Y. 197 (32 N. E. 27). There are a very few cases which hold to a contrary doctrine, as, for example, *O'Bear Co. v. Volfer,* 106 Ala. 205 (17 South. 525, 28 L. R. A. 707).

For appellant it is argued that the plaintiff should have followed the stock received by Hartung. That proposition is very satisfactorily answered in *Hibernia Co. v. St. Louis Co.* (C. C.) 13 Fed. 516, where it is said that a creditor in such cases is not required to run the chances of following and recovering the value of the shares of the stock after they are placed upon the market. In *McIver v. Young, supra,* this proposition is fully considered and determined adversely to appellants' contention. On account

of the importance of the questions presented, we have given the case careful consideration, and have come to the conclusion that, while there is no personal liability on the part of the undertaking company as successor in interest to the plaintiff, yet it holds the property received from the cabinet company subject to the payment of plaintiff's claim, and that the trial court was right in establishing a lien against it and ordering a sale on special execution. The decree must be modified to the extent indicated; but, as this is of no material benefit to the defendant, as the property is worth very much more than plaintiff's claim, we think that the modification should be without cost to appellee.

The decree will be modified, and as so modified will stand.

*Modified* and *affirmed*.