BESSIE FARNSWORTH, Appellant, v. THE MUSCATINE PRODUCE & PURE ICE Co. et al., Appellees.

**TRUSTS:** Establishment of Trust—Following Trust Property or Pro-
1  ceeds—Showing Necessary—Fraud. One who has been *fraudulently* deprived of *his property* and seeks to establish a trust against the defendant and defendant's general creditors, must actually point out *his property* which is the subject of the trust, or actually show that *his property* has passed into other *identified* property and is preserved in that form in the hands of defendant.

**CORPORATIONS:** General Creditors—Fraudulent Transfer of Assets
2  —Creditor's Lien. Equity regards the property of a corporation as held in trust for the payment of the debts of the corporation, and recognizes the right of creditors to pursue such property into whosesoever possession it may be transferred, *unless, in the ordinary course of business, it has passed into the hands of a bona fide purchaser.*

PRINCIPLE APPLIED: Plaintiff brought action against a corporation for rescission of a fraud-induced contract for the purchase of corporate stock. All the stockholders knew of the suit. Less than two weeks thereafter, the stockholders, under a perfectly amicable arrangement, caused the corporation and its property to be placed in the hands of a receiver, on the ground of insolvency, and, on the same day, the court ordered the sale of the corporate property on a date two weeks thence. The property was so sold to the president of the corporation, the sole consideration being a promise to pay the debts of the corporation. The receiver was discharged the next day. No notice of any step in the receivership proceedings was ever served on any creditor. Three weeks later, the sole stockholders of this now defunct corporation organized a *new* corporation (with a name almost identical with the old), became *its* sole stockholders, and the said property, bought by the president for himself and associates, was conveyed to the new corporation. The stockholders in the new corporation paid nothing for their new stock. Subsequent to these manipulations, plaintiff secured judgment against the defunct concern. *Held*, the transfer was not in good faith in the ordinary course of business, and equity would decree a lien on said property in the hands of the new corporation.

**RECEIVERS:** Nature of Receivership—Friendly (?) or Adversary (?)
3  Evidence reviewed, and held to show that the receivership in

question was not adversary, but a friendly proceeding among all the stockholders to so manipulate the affairs of the corporation as to defeat a creditor in the collection of his claim.

PRINCIPLE APPLIED:    See No. 2.

*Appeal from Muscatine District Court.—*A. J. HOUSE, Judge.

THURSDAY, JUNE 29, 1916.

SUIT in equity to establish a lien in favor of a creditor of a corporation upon property of the debtor corporation in the hands of a new corporation, to which it was transferred by the stockholders of the old corporation. The old stockholders, having purchased all the property of the old corporation and thereupon organized the new corporation, transferred to it all the property so purchased from the old corporation in consideration of stock received by them from the new corporation. Decree dismissing plaintiff's petition in the court below. Plaintiff appeals.—*Reversed.*

*Wade, Dutcher & Davis,* and *D. V. & R. S. Jackson,* for appellant.

*E. M. Warner, J. F. Devitt* and *Jayne & Hoffman,* for appellee.

GAYNOR, J.—The plaintiff brought this action in equity to rescind the sale of certain stock purchased by her and her husband from the defendant company, and to recover the consideration paid. It was alleged in her petition that the officers of the company, for the purpose of inducing plaintiff and her husband to invest in the stock, made certain false and fraudulent representations; that they relied upon these representations and were induced to purchase the stock; that the representations were false, and so known to be by the defendant, and made for the purpose of inducing them to purchase the stock and part with their money. Plaintiff further prayed that the court establish an equitable lien upon

certain property owned by the corporation at the time of the transaction, to secure the payment of her claim. Upon that issue, the cause was tried to the court below, and plaintiff's petition dismissed. From the action of the court, she appealed to this court; and, on the 3d day of June, 1913, the action of the lower court was reversed, and direction given to enter judgment for the plaintiff for the amount of her claim against the defendant, with costs. In this court, the right to a lien upon the property for the amount of the judgment ordered was not determined on that hearing, for the reason, as the court held, that the proper parties for the determination of that issue were not before the court. See *Farnsworth v. Muscatine Produce & Pure Ice Co.,* 161 Iowa 170.

As the prayer for an equitable lien upon the property was not granted by this court, the court, upon rehearing, filed a supplemental opinion as follows:

"The cause is remanded, with direction to the district court to enter judgment against the defendant corporation for $1,000, with interest at six per cent from August 9, 1910, and for costs . . . , with leave . . . to plaintiff to amend and bring in new parties, that the court may hear all parties as to whether the plaintiff is, or is not, entitled to a lien on the property described in her petition for the judgment herein directed."

See supplemental opinion, *Farnsworth v. Muscatine Produce & Pure Ice Co.,* 177 Iowa 20.

When the case reached the lower court for further proceeding in accordance with the decision of this court, judgment was entered for the plaintiff against the defendant, Muscatine Produce & Pure Ice Company, for $1,204, being the amount of plaintiff's claim, with interest, and with $227 costs. Thereupon, an amendment to plaintiff's petition was filed, in which all parties interested in the matter remanded for retrial were brought before the court. In this amendment, plaintiff alleged that, on the 28th day of January, 1911, her original petition was filed; that, on the 22d day of March,

1911, an application was made to the court alleging the insolvency of the defendant, and asking the appointment of a receiver; that, on said day, a receiver was appointed of all the property of defendant corporation, and, at the same time and in the same order, the receiver was directed to sell all the property of the corporation on April 6, 1911, at public sale; that said order provided for no appraisement of the property, and made no provision for notice to anyone, and no notice was served on this plaintiff; that, on the said 6th day of April, all the property of the corporation was sold at public auction, for the sum of $47,800, to one Henry Umlandt.

On the 7th day of April, the receiver made a report of the sale, stating to the court that all the property had been sold, and stating, so far as material to this suit, that, immediately upon his appointment, he gave bond, took possession of the entire property of the corporation, sent a large number of advertisements of sale to persons likely to be interested in the purchase, and, on the 6th day of April, in accordance with the order of the court, sold the entire property of the corporation; that he received a $10,000 deposit down upon the sale, and asked that the sale be approved. In this report, the receiver gave an itemized statement of the amount at which each particular portion of the property was sold that was offered for sale. This report was approved and confirmed by the court, and the receiver directed to execute conveyance of all the property of the corporation to the purchaser. This report indicates that the bids were made by E. M. Warner and the property declared sold to him. Thereafter, on the 13th day of April, the receiver filed his final report in the following words:

"As heretofore all of the property of the company was, in conformity to the order of this court, sold at public auction for the sum of $47,800, and the deed of conveyance therefor has been duly approved by the court. And the receiver now reports to the court that he has paid out all the money received by him by the sale of the said property in liquidation of the

debts of said corporation. He reports that all of the debts have been paid, with the exception of one in the sum of $52.77 claimed by the Buffalo Cold Storage Company, to be due their concern. The managing officers of the Muscatine Produce & Pure Ice Co. dispute the correctness of this claim and have entered into an arrangement whereby the sum actually due may be ascertained, and whereupon the said officers undertake and agree to pay. The receiver reports that the property was sold to a number of persons who heretofore have been stockholders of the corporation. These persons are sureties upon the notes of the corporation and upon its other debts in a considerable sum. These persons have arranged with the outstanding creditors of the concern to the end and effect that the debts heretofore due by the Muscatine Produce & Pure Ice Co., shall hereafter be the debts of the persons referred to, and the said corporation fully released from all liability thereon. There being no reason why the receivership shall be longer continued, and the best interests of the property require that the receivership be terminated as soon as possible, the receiver prays that this his final report be approved and that the court fix compensation for the services rendered by him, together with a reasonable fee for his attorneys, and that this receiver be discharged and his bond exonerated.''

This report was approved by the court on the day of its filing, and the receiver and his bondsmen discharged.

Henry Umlandt testified that he was president of the defendant company for some time before its dissolution; was present at the time Mrs. Farnsworth bought her stock.

''I had Mr. Warner buy for me the property sold by the receiver. I don't know whether I figured up the indebtedness of the company before the sale or not. We went over a list of the debts of the company and agreed to pay the amounts on that list. I knew at the time I purchased this property, and at the time we arranged for the payment of the debts, that Mrs. Farnsworth's claim was then pending in

court. We talked about the lien occasionally, to the effect that, if the lien were established against the property, it naturally would have to be paid. The property was good for it. We paid all debts except this claim of Mrs. Farnsworth's. There was nobody in the new corporation that was not a stockholder in the old corporation. The arrangement between me and the other stockholders with reference to continuing the business was that, if there was nobody came here to buy it, why we would buy it in and continue the business. When I bought this property from the receiver, I bought all the assets of the corporation of every kind. The business was continued in the same plant as was formerly owned by the Muscatine Produce & Pure Ice Co. The capital stock of the new company was $75,000. We paid off $57,000 indebtedness of the old corporation. That included all the debts of the corporation except Mrs. Farnsworth's claim. I don't remember of any money that was paid in aside from the payment of the indebtedness of the old corporation.''

On the 29th day of April, 1911, Umlandt, the purchaser of the property, with the other persons for whom he purchased it, organized a new corporation, the Muscatine Produce & Ice Company (the only change was in dropping the word ''Pure'' from the name), with an authorized capital of $100,000, and got from the executive council authority to issue stock to the amount of $75,000. Thereupon, all the assets of the old corporation were turned over to this new corporation, with all the stockholders of the old corporation as stockholders in the new corporation.

Dr. Beveridge testified that he was one of the stockholders in the old company; took part in the negotiations for the sale of its assets; that no one was associated with him in the negotiations for the sale except the stockholders for the old corporation; that the debts of the old corporation, at the time of the sale, amounted to $55,000. He testified:

''Mr. Umlandt bought all the assets of every kind of the old corporation. We bought in on a definite agreement to pay

the amount of indebtedness the receiver had totalled up.   I knew Mrs. Farnsworth was making a claim against this property.   I don't know of any property left in this old corporation to pay this claim in case it is allowed.''

This is sufficient of the record to present the law questions involved in the determination of this suit.

It would seem, from the contention of counsel for the defendant in this court, that they are under a misapprehension as to the real ground on which plaintiff's right to the relief prayed for rests, and this misapprehension of the law, we assume, was indulged in by the court.   We assume this from the fact that the court refused to grant the plaintiff the relief prayed for, and dismissed her claim, founded on the amendment to her petition.   In view of the authorities cited and the argument presented, it seems to be the thought of counsel that the plaintiff has assumed the position of one who has deposited money or property in trust with a corporation.

1. TRUSTS: establishment of trust: following trust property or proceeds: showing necessary: fraud.

The defendant evidently has attempted to make the plaintiff's case for her, and then to defeat her by the application of those rules which govern the rights of one who, having deposited money in trust, seeks to have the money returned (in case of insolvency and the appointment of a receiver), as against the general creditors of the insolvent corporation.   If this were the rule that governed plaintiff's rights in this case, she clearly would not be entitled to recover, for the very plain reason that, even though she has established the trust character of the property delivered to the corporation, it affirmatively appears that the money obtained from her, which she now seeks to collect, was, upon its receipt, applied by the corporation to the payment of overdrafts at a bank with which the corporation was doing business; that this money never was retained in the hands of the defendant corporation, nor was it invested in property that came into the hands of the corporation, nor did it, or any property representing it, pass

into the hands of the receiver. Therefore, as neither the original trust fund nor property representing an investment of the trust fund was ever retained by the corporation, nor passed in original form or in substituted form into the hands of the receiver, the plaintiff has not shown the existence of a fund in which she is entitled to be preferred. None of the trust property passed to the receiver. Therefore, there was no trust property that she could take from the estate. The trust fund having been dissipated, she stood as a general creditor of the estate, entitled to participate in the existing fund, the same as any general creditor.

The trust relationship, if any, grew out of the fact that this money which she seeks to recover was obtained by the defendant corporation from her through fraud. But the trust character of her claim is not essential to her right to recovery in this case. Every corporation has its own property. In that property, it has both legal and equitable right and title. As to property deposited with it in trust, it owes a duty, as trustee of the fund, to preserve it and return it on demand. Money, having no earmarks, of course cannot be identified; so, if the deposit is money in trust, the trustee becomes obliged to return the money on demand, in fulfillment of the trust. If the money deposited in trust is converted into other property, and the truster can trace it into property that passed into the hands of the receiver, he may demand and receive his money out of this property into which it has been converted. The reason of the rule is that it does not harm general creditors for one who has deposited money in trust with a corporation to take back his own, leaving the property of the corporation intact for general creditors. But if he cannot identify or trace his own into the property that passed into the hands of the receiver, then, of course, there is nothing for him to take of his own. He therefore must look to the general property, the same as a general creditor, if he would take from that.

Of course, there is the general rule that, where money

has been deposited in trust with a corporation, and the corporation becomes insolvent and a receiver is appointed, and money is found in the possession of the corporation which passed to the receiver, it will be presumed that the corporation acted in good faith touching the trust fund and retained it, and that the money passing to the receiver represents the trust fund.   Good faith would require it to retain the trust fund, and the presumption is that it did do so, unless the contrary appears.   This is the general rule; but this rule does not obtain where a trust exists because of fraud practiced in procuring the fund.   There, the very proof of the fraud negatives the good faith and destroys the presumption.  · In such cases, it is incumbent upon the person asserting the trust to point out the property which is the subject of the trust, or show that it has passed into the identified property and is preserved in that form.   Then, of course, like every other one having a claim against the trust fund, he may take his own.   This does not harm the general creditors who have no claim against him or his.

We will not pursue this subject further.   We call attention to those decisions in which the doctrine is laid down and fully exemplified, which involve a contest between one who claims a trust fund in the hands of a receiver or assignee of an insolvent concern, and the general creditors of the insolvent concern.   See *Jones v. Chesebrough*, 105 Iowa 303; *State Trust Company v. Turner*, 111 Iowa 664 (a case which, though not directly in point, discusses the questions here under consideration); *Seeley v. Seeley-Howe-Le Van Co.*, 128 Iowa 294; *Luedecke v. Des Moines Cabinet Co.*, 140 Iowa 223; *First State Bank v. Oelke*, 149 Iowa 662.   In this last case, it was said:

"The appellees base their claims for preference on the grounds that their money was obtained by fraud, false representations and forgery, and because thereof the bank became a trustee of said money *ex maleficio*, and they say that, their money having been traced into the funds of the bank, the

assets of said bank in the hands of the receiver were necessarily increased thereby.''

In this case, it was held to be a well-settled rule that a preference would not be allowed in favor of one claiming a trust fund, unless it be found that the fund actually exists in the hands of the receiver, or has increased the funds that have passed into the hands of the receiver, to the extent of the trust property. Or, in other words, it must affirmatively appear, either by actual proof or by presumption (to which reference has been made before), that the trust fund, or its proceeds in some form, has gone into and augmented the fund in the hands of the receiver and is held by him for the payment of the debts of the corporation. Referring to *Bradley v. Chesebrough,* 111 Iowa 126, it was said:

" 'That plaintiff was a trust creditor does not, of itself, entitle him to preference over general creditors. To obtain that right, he must show, by presumption of law or otherwise, that his fund has been preserved in the hands of the assignee, as an increase of the assets of the estate, from which it may be taken without impairment of the rights of general creditors.' . . . The general rule, where a person has been induced to part with his money or other property through fraud, is that the defrauded party may recover his property, or the proceeds thereof, if he can trace and identify it, but the identification must be made without the aid of a legal presumption.''

It follows, therefore, that the burden is on the one claiming preference to point out the fund into which his property has gone, show that it exists, passed into the hands of the receiver, either in its original form or as substituted in other property, and that, in taking out his property, he leaves the property of the insolvent concern intact for general creditors. But it is said that, where the trust rests upon fraud practiced by the trustee in procuring it, the good faith in preserving the fund (where property is shown to exist in the hands of the receiver) does not raise a presumption that the defrauder

retained the fruits of his fraud for the benefit and use of the party defrauded. In such case, there must be actual proof of the possession of the property in the hands of the receiver, or its proceeds.

It is true that, in plaintiff's amendment to her petition, she speaks of the proceeding as one instituted for the purpose of securing a preference; and it is true that one paragraph of her pleading suggests the claim imputed to her by the defendants, as referred to above; but the real claim made by the plaintiff is based on the fact that she was a creditor of the defendant corporation, holding a bona fide claim against it. This claim has been reduced to judgment. The relief prayed for is that this court of equity grant to her an equitable lien on the property which was owned by the defendant corporation and in its possession at the time her debt accrued, at the time she became a creditor, and at the time the receivership proceedings were instituted; and it is alleged that this property is still in existence; that it is now in the possession of the new corporation, which never paid anything for it except in assuming, if it did assume, the debts of the old corporation; that this new corporation was organized by the old stockholders, and all its stock was issued to and is now held by the stockholders of the old corporation as stockholders of the new; that, when the property of the old corporation was purchased by the stockholders of the old corporation, the only consideration was an agreement to pay the debts of the corporation; that the property, when purchased, was turned over to the new corporation without further consideration. These same stockholders came to Des Moines, got consent of the executive council to issue stock to the amount of $75,000, based on a valuation placed upon the property received by it from the old corporation; and all the debts of the old corporation have been paid except this plaintiff's claim.

The record discloses that Umlandt, the president of the

*2. CORPORATIONS: general creditors: fraudulent transfer of assets: creditor's lien.*

old corporation and a stockholder, purchased the assets of the
old corporation at the receiver's sale' for himself and other
persons; that the application for the sale was made immedi-
ately upon the appointment of the receiver; that the receiver
was ordered to make sale on the 6th of April; that the sale
was made on that day. The sale was reported the next day
and approved. On the 13th day of April, the receiver made
his final report, in which he said, among other things:

"The receiver reports that the property was sold to a
number of persons who, heretofore, have been stockholders of
the corporation. These persons were sureties on the notes of
the corporation, and upon their debts in a considerable sum.
These persons have arranged with the outstanding creditors
of the concern, to the end and effect that the debts heretofore
due by the Muscatine Produce & Pure Ice Company, shall
hereafter be the debts of the persons referred to, and the said
corporation fully released from all liability therefor."

Unquestionably, this report of the receiver was a friendly
report, so far as the defendant and its stockholders were con-
cerned. The corporation and its stockholders had full knowl-
edge of the provision of the report at the time it was filed and
the report approved. On April 29th, Umlandt, the president
of the old corporation and the ostensible purchaser of the
property, together with other persons for whom he purchased
the same, being also stockholders of the old corporation, organ-
ized a new corporation, assuming the same name as the old
corporation, except in the dropping of the word "Pure."
Immediately thereafter, all the property of the old corpora-
tion was turned over to this new corporation, no consideration
therefor passing to it from the new corporation. All the debts
of the old corporation were assumed by these stockholders of
the old corporation, and, we presume, discharged by them.
This new corporation took into its possession all the property
of the old corporation, and on the basis of this, it was author-
ized to issue stock to the amount of $75,000. All the stock-
holders in this new corporation were the stockholders in the

old corporation. It would seem from the receiver's report that these stockholders of the old corporation assumed the payment of plaintiff's claim, as well as the other debts of the corporation. It is conceded to be a debt, and was a debt at the time of the transaction. The receiver reports that these purchasers assumed and agreed to pay, or had arranged to pay, the debts of the old corporation, and we must assume they discharged this obligation, except in the payment of plaintiff's claim. It is contended, however, by the defendant Umlandt that they did not agree to pay plaintiff's claim when they assumed and agreed to pay the debts of the old corporation, but only such debts as were listed by the receiver as debts against the corporation, and that this debt was not upon the list. Umlandt testifies upon this point:

"I was president of the company at the time when Mrs. Farnsworth bought her stock. Her case was pending at the time the receiver was appointed. I had Mr. Warner buy the property of the old corporation for me. I don't know whether I figured up the indebtedness of the company before the sale or not. We went over a list of the debts of the company and agreed to pay the amount of that list. I knew at the time I purchased this property, and at the time we arranged for the payment of the debts, that Mrs. Farnsworth's claim was pending here in court. We talked about it, and concluded that, if she established a lien against the property, her claim would have to be paid. The property was good for it. We paid all the debts except the claim of Mrs. Farnsworth. The indebtedness of the old corporation consisted largely of notes. The notes were secured by personal endorsement. Some of the debts of the old corporation were assumed, and others were paid. We paid the indebtedness of the old corporation except Mrs. Farnsworth's claim. I don't know whether the stockholders of the new corporation paid any money for the stock in the new corporation. I don't remember of any money that was paid aside from the old indebtedness."

Plaintiff's contention is that this court, as a court of equity, upon the facts disclosed in this record, should establish in her favor an equitable lien upon the property (describing it), now shown to be in existence and in the possession of this new corporation, because this property was in existence and in the possession of and owned by the old corporation at the time her debt accrued. Her request is that this court of equity reach over and across the manipulations of these stockholders and take the property, which, at one time, was clearly the fund out of which she was entitled to be paid, and impress upon this property a lien in her favor; and this, on the theory that this new corporation is not a good-faith buyer for value, nor were the stockholders of the old corporation, from which it received the property. So far as this new corporation is concerned, it never paid any consideration for the property that passed to its name. It is not contended in this case that the plaintiff had a lien upon the property, but it is contended that, being a creditor of the old corporation, she has an equitable right to a lien upon the property, under the facts disclosed in this record. It is not contended that, if the property of the old corporation had passed out of its hands in the ordinary course of business, or to a bona fide purchaser for value, without notice, the plaintiff would then be entitled to pursue the property on the ground that the property of a corporation is a trust fund for the payment of the debts of a corporation. In *Railway Company v. Howard*, 7 Wall. (U. S.) 392, 409 (19 Law. Ed. 117), it is said:

"Equity regards the property of a corporation as held in trust for the payment of the debts of the corporation, and recognizes the right of creditors to pursue it into whosesoever possession it may be transferred, unless it has passed into the hands of a bona fide purchaser."

The case of *Luedecke v. Des Moines Cabinet Company*, 140 Iowa 223, in its facts is similar to the case at bar. Plaintiff was a creditor of the Des Moines Cabinet Company, and held an unliquidated demand against it. Suit had been com-

menced, when the cabinet company sold its assets to an under-
taking company.   The undertaking company acquired all the
assets of the cabinet company by purchase.   In payment, it
issued certain shares of stock to one Hartung, president of
the selling corporation.   Hartung immediately pledged this
stock as security for his individual debt, leaving no property
of the Des Moines Cabinet Company from which plaintiff
could collect his judgment, which he obtained in due course.
The plaintiff in that case brought suit in equity, alleging that,
when the undertaking company purchased the property, it
knew of plaintiff's claim, and notwithstanding this knowledge,
took the property and converted the same to its own use, with-
out other consideration than the issuance of its own stock in
payment therefor to Hartung, president of the old corpora-
tion; that, by reason of this transfer, the undertaking com-
pany became possessed of all the property of the cabinet
company, leaving nothing for the payment of debts.   This
court, in that case, stating the contention of the parties, said,
in substance:

"As we understand it, plaintiff relies upon a single
proposition in this case, and this is that, where one corpora-
tion transfers all its assets to another corporation, and thus
practically ceases to exist without having paid its debts, the
purchasing corporation takes the property subject to an equi-
table lien or charge in favor of the creditors of the selling
corporation, and this without reference to the question of
actual fraud.   If the affirmative of this proposition be held,
it must be upon the theory that the assets of a corporation
are in the nature of a trust fund for the payment of its debts,
and that a sale of the entire property works a dissolution of
the selling corporation, and justifies an accounting at the suit
of creditors."

The court below, in that case, established plaintiff's judg-
ment against the cabinet company as a lien upon the property
purchased by the undertaking company, as prayed.   This
court, in passing upon the correctness of the action of the

court below in establishing a lien against the property in the
hands of the undertaking company, said:

"A great many authorities in this country hold to the
doctrine that, if one corporation transfers all its assets to
another, and thus practically ceases to exist without having
paid its debts, the purchasing corporation takes the property
subject to an equitable lien or charge in favor of the creditors
of the selling corporation. Some courts announce a modified
doctrine declaring that the principle has no application to a
sale made in the usual course of business, nor to a bona fide
sale for a full consideration in cash or its equivalent."

The holding of the court in that case is that a general
creditor has not such a lien upon the property of the cor-
poration that he can pursue it in the hands of a bona fide
purchaser for a full consideration in cash, or its equivalent;
that the true rule is that, where the property passes to one
who is not a good-faith purchaser in the ordinary course of
business, a creditor has an *equitable right to a lien*, which
will be enforced by a court of equity in his favor, against
the property in the hands of a purchaser not protected under
what is called the modified rule. The holding is that the
creditors of a corporation *in a proper case* have an equitable
right or lien upon the assets of a corporation, and may pursue
this right and have an equitable lien established against the
property in the hands of one who is not a good-faith pur-
chaser. The rule is recognized that, where one corporation
transfers all its assets to another, not in the ordinary course
of business, the very circumstances of the case imply full
knowledge on the part of the transferee of all the facts neces-
sary to charge the property in the hands of the purchaser
with the debts of the seller; and this is especially true where
the purchasing corporation is a product of the ingenuity of
the stockholders of the old corporation, who took the property
with full knowledge of the right of the plaintiff and trans-
ferred it to the new body of their own creation.

There can be no question in this case that the old corpora-

tion had full knowledge of plaintiff's claim and of the fact that she was pressing it in court; that the stockholders of the old corporation knew this; that the stockholders of the new corporation carried with them this knowledge when they extinguished the old and entered the new; that the new corporation took the property with all the knowledge possessed by its creators.   When application was made to the executive council for permission to issue the capital stock of the new corporation in the sum of $75,000, it stated the following facts: That the stockholders of the new company were formerly stockholders of the old company whose property was sold at receiver's sale; that these stockholders were liable, as endorsers, upon the paper of the old company; that they, the stockholders, bought in at the receiver's sale all the property of the old company.   Desiring to carry on the business and to protect their investment, they formed a new corporation, and desired to issue, of its authorized capital stock, the sum of $75,000, in exchange for the property purchased by them at the receiver's sale, which they propose to convey to the new corporation.

We hold that this defendant was not a bona fide purchaser of the property in controversy, in the ordinary course of business, and plaintiff is entitled to have an equitable lien, under the facts disclosed in this case, impressed upon the property in its hands, for the payment of her judgment.

In *Wilson v. Æolian Co.*, 72 N. Y. Supp. 150, it was held that a creditor, having recovered a judgment in an action at law against a corporation after it had transferred its assets to a new consolidated corporation, without other consideration than the exchange of the stock of the new corporation for the stock of the old, was entitled in equity to enforce his judgment against the assets which the new corporation received from the constituent corporation, under the trust fund doctrine, to which we have heretofore referred.   As bearing upon this question, see *Morrison v. American Snuff Company*, 79 Miss. 330 (89 Am. St. Rep. 598, 30 So. 723);

*Montgomery & West Point R. Co. v. Branch,* 59 Ala. 139;
*Western N. C. R. Co. v. Rollins,* 82 N. C. 523.

Summing up, we hold that the new company gave noth-
ing to the old company. It gave its stock to the individual
stockholders of the old corporation. The transfer, if sanc-
tioned, deprived the creditors of the old corporation of their
right to an equitable lien upon the property so transferred,
in the hands of the transferee. To sustain it results in a
fraud upon the creditors of the old company. The stock-
holders of the new company were the stockholders of the old
company. They cannot be said to have been purchasers for
value or in good faith, under the circumstances disclosed in
this case. See *Wilson v. Æolian Co.,* 72 N. Y. Supp. 150, in
which is a fair discussion of the questions here under con-
sideration. In this case, it is said:

"We know of no rule of equity which will permit one
corporation organized out of the officers, directors and stock-
holders of another, to appropriate to itself all the assets of
the latter, without consideration moving to the corporation,
where the rights of third persons are involved."

Some contention is made by defendants that the pro-
ceedings resulting in the appointment of a receiver were
adversary so far as this old corporation and its stockholders
were concerned, but a careful examination of the record satisfies us that it was only a means to an end, and this end was sought for by all the stockholders of the old corpora-
tion, and found its consummation in the creation of this new
corporation. It appears that defendants did not contest the
appointment of a receiver, but agreed to it. The petition was
filed on the 18th day of March. An order was made on the
22d day of March. With the consent of all parties, the prop-
erty was ordered sold on the 6th of April. All the property
of the corporation was sold on the 6th of April, purchased
by the stockholders of the old corporation, report made of
sale on the next day, and the receiver discharged. Imme-

3. RECEIVERS:
nature of re-
ceivership:
friendly (?) or
adversary (?)

diately thereafter, the new corporation was born and chris-
tened, all the old stockholders standing as sponsors at its
baptism.

Upon the whole record, we have reached the conclusion
that the plaintiff is entitled to the relief prayed for in her
petition; that she is entitled to have a lien established against
the property received by this new corporation from the old;
and that decree should be entered accordingly. Plaintiff may
have decree in this court or in district court, as she may elect.
—*Reversed.*

EVANS, C. J., LADD and SALINGER, JJ., concur.