**William H. BURDEN, Jr. and Mary Marcia Burden, husband and wife, Appellants,**

v.

**Robert H. VERSMAN and Kiddie–Rides USA, Inc., a corporation; Thomas Leon and Dorothy L. Versman, Appellees.**

**No. 90–1687.**

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 11, 1990.

Decided May 24, 1991.

Realff Ottesen, Davenport, Iowa, for appellants.

Edward Wehr, Davenport, Iowa, for appellees.

Before WOLLMAN, Circuit Judge and HEANEY and FRIEDMAN,* Senior Circuit Judges.

---

* The Honorable Daniel M. Friedman, United States Senior Circuit Judge for the Federal Circuit, sitting by designation.

HEANEY, Senior Circuit Judge.

Appellants William H. Burden, Jr. and his wife, Mary Marcia Burden, contend in this appeal that the district court erred in refusing to find defendants Kiddie Rides USA, Inc., Robert H. Versman, Thomas Leon, and Dorothy Versman liable for a judgment against Universal Visual Audiotronics Corp. (Universal). The Burdens sued the defendants to enforce a judgment for rescission of a contract with Universal, a defunct corporation whose assets were distributed to the defendants while the Burdens' rescission action was pending. We reverse.

## BACKGROUND

Universal was incorporated in Iowa in November 1974. Robert H. Versman, Dan G. Versman, and Thomas Leon were the officers, directors and sole shareholders, each owning one share of common stock. Universal sold and distributed "Kiddierama" coin-operated cartoon theaters. In August 1978, the Burdens contracted with Universal to purchase Kiddierama machines in hopes of generating investment income. In July 1979, the Burdens filed an action against Universal in Missouri state court to rescind the contract. The Burdens dismissed that action without prejudice in August 1981. In June 1982, the Burdens filed another rescission action against Universal in the United States District Court for the Western District of Missouri. Their complaint was served on Robert Versman on July 8, 1982. In June 1985, the court awarded the Burdens judgment against Universal for $47,344.01. While the Burdens' federal court action was pending, however, Universal ceased to exist, and all its assets were transferred to the defendants and others.

In early 1980, due to a decline in cartoon machine sales attributed to market saturation and high interest rates, the Versmans and Leon began to discuss the possibility of liquidating Universal and forming a new corporation to market a different product. Later that year, Universal began to test-market coin-operated kiddie rides. When the test-marketing proved successful, the Versmans and Leon formed a new corporation to operate the kiddie ride business. They filed articles of incorporation for Kiddie Rides USA, Inc. (Kiddie Rides) on February 9, 1981. The Versmans and Leon were the incorporators, directors, and sole shareholders. The corporation issued stock certificates to the Versmans and Leon on March 4, 1981.[1]

Early in 1981, Universal transferred its inventory of rides as of December 31, 1980 and all accounts receivable from its ride test marketing to Kiddie Rides in exchange for a note. Kiddie Rides thus owed Universal $117,616.14 ($108,652.35 plus interest of $8,963.79) on December 31, 1981. The note was satisfied by a series of charge-offs against liabilities Kiddie Rides assumed on behalf of Universal in 1982.

Leon resigned as an officer and director of both Universal and Kiddie Rides on April 20, 1981. In December 1981, Robert Versman and Leon reached a tentative agreement on the value of Leon's stock in Universal and Kiddie Rides for purposes of redemption. Kiddie Rides assumed liability of $32,548.00 for the value of Leon's Universal stock, $7,845.00 for a loan Leon had made to Universal, and $200.00 accrued interest on the loan. These amounts became an account payable of $40,593.00 on Kiddie Rides' books, which was deducted from the note Kiddie Rides owed to Universal.[2] The tentative agreement which Leon

1. Dan Versman died on February 22, 1981. Dorothy Versman, his widow and executor of his estate, became an officer and director of both Universal and Kiddie Rides in March 1981. Although Dorothy Versman did not wish to remain involved in the businesses after her husband's death, an agreement to redeem the estate's stock in the corporations was not executed until August 16, 1982.

2. The tentative agreement valued Leon's stock in Kiddie Rides at $15,485.00. Under the tentative agreement, Leon was to tender and receive payment for his stock on January 2, 1982. This transaction never occurred. The tentative agreement was finally executed in February 1984, following settlement of litigation between Leon and Robert Versman. Because of credits and set-offs from other transactions, the final

signed required Leon to pay one-third of any damages against Universal subsequently awarded on claims arising before Leon's resignation from the corporation.

On August 16, 1982, Kiddie Rides paid Dan Versman's estate $32,264.45 to redeem the estate's stock in Universal.[3] It also paid off a $7,375.00 loan which Dan Versman had made to Universal. Kiddie Rides then credited its note payable to Universal for $39,639.45.[4] The stock redemption agreement which Dorothy Versman signed as executor of Dan Versman's estate required Versman's estate to assume a one-third share of any liability arising out of the Burdens' federal court action against Universal.

On October 22, 1982, Universal adopted resolutions to liquidate. Kiddie Rides purchased Universal's remaining inventory of Kiddierama cartoon machines and parts for $3,620.00. Universal's bank account of $3,752.29 had been closed out to Kiddie Rides on March 16, 1982. Universal's remaining asset, a leasehold improvement worth $1,817.00, was assigned to Robert Versman.[5] On December 1, 1983, the Secretary of State of Iowa cancelled Universal's certificate of incorporation for failure to file an annual report.

Because Universal no longer existed on June 26, 1985, when judgment was entered for the Burdens in their federal court action for rescission, they filed this action to enforce the judgment against Kiddie Rides and Universal's individual shareholders. The Burdens claimed that Kiddie Rides should be directly liable for the judgment as a successor corporation to Universal, and that an equitable lien should be imposed on the assets of Universal in the hands of Kiddie Rides and the individual shareholders to satisfy the judgment.

The district court rejected these arguments, finding that the defendants did not intend to defeat the Burdens' claim through the formation of Kiddie Rides and liquidation of Universal, that Kiddie Rides was a corporation entirely separate from Universal which had not expressly or impliedly agreed to assume liability for Universal's debts, and that all transfers of assets from Universal to the defendants constituted bona fide transfers in the ordinary course of business. Accordingly, the district court entered judgment for the defendants.

## DISCUSSION

On appeal, the Burdens claim that they are entitled to enforce their judgment against Universal through an equitable lien against Universal property transferred to the defendants. They claim that the district court erred in concluding that the transfers of property between Universal and Kiddie Rides which culminated in Universal's liquidation and the redemption of the Universal shareholders' stock constituted bona fide transfers in the ordinary course of business.[6]

■ We review de novo the district court's determinations of state law. *Salve Regina College v. Russell,* —— U.S. ——, ——, 111 S.Ct. 1217, 1225, 113 L.Ed.2d 190 (1991). Under Iowa law, if a corporation transfers its property in good faith to a bona fide purchaser for value without no-

---

settlement required Leon to pay Robert Versman $35,000.00.

3. Kiddie Rides also paid $8,884.00 to redeem the estate's stock in Kiddie Rides.

4. The remaining $37,383.69 of Kiddie Rides' note payable to Universal was charged off through Universal's reimbursement of Universal expenses erroneously paid by Kiddie Rides in 1981 and 1982, by a charge back to Universal for bad debts incurred by Kiddie Rides on accounts receivable transferred from Universal, and by Kiddie Rides' assumption of a Universal note for $5,245.80 payable to Robert Versman.

5. On March 15, 1981, Universal had paid cash dividends of $102,446.00 to Leon, Robert Versman, and Dan Versman's estate. According to Universal's accountant, the shareholders returned most of this money to Universal to pay debts owed to the corporation by other enterprises owned by the Versmans and Leon.

6. The Burdens also renew their argument that Kiddie Rides should be liable for the judgment against Universal as a successor corporation. Because we base our decision on equitable lien theory, we find it unnecessary to discuss this claim.

tice, the purchaser holds the property free from the debts of the corporation. *See Farnsworth v. Muscatine Produce & Pure Ice Co.,* 177 Iowa 21, 158 N.W. 741, 746 (1916); *Luedecke v. Des Moines Cabinet Co.,* 140 Iowa 223, 118 N.W. 456, 457 (1908). Conversely, "unless the transfer is to a good-faith transferee for value in the ordinary course of business, or the transferor pays or makes provision for the payment of its creditors, the creditors may follow the transferred property into the hands of the transferee to satisfy their claims." *Nelson v. Pampered Beef–Midwest, Inc.,* 298 N.W.2d 281, 285 (Iowa 1980).

Similarly, "corporate creditors are entitled in equity to the payment of their debts before any distribution of corporate property is made among the stockholders." *State v. Simmer Oil Corp.,* 231 Iowa 1041, 2 N.W.2d 760, 762 (1942) (quoting *Luedecke,* 140 Iowa at 229, 118 N.W. at 458). Accordingly, Iowa courts have granted corporate creditors equitable liens against corporate assets in the hands of transferees who are not good faith purchasers in the ordinary course of business. *See, e.g., Nelson,* 298 N.W.2d at 286; *Smith v. Village Enterprises, Inc.,* 208 N.W.2d 35, 40 (Iowa 1973).

 This case therefore turns on whether the defendants received Universal's assets as good faith purchasers in the ordinary course of business. The district court based its conclusion that the defendants took the assets as bona fide purchasers on the defendants' lack of intent to defeat the Burdens' claim and on the regularity and thoroughness of the accounting procedures attending the transactions. Under Iowa law, however, these considerations are irrelevant to a determination of whether a corporate creditor is entitled to an equitable lien on transferred corporate assets. Iowa courts have granted such liens without regard to whether the transfers were made with intent to hinder, evade, or defraud creditors. *See Smith,* 208 N.W.2d at 39; *Simmer Oil Corp.,* 231 Iowa at 1044, 2 N.W.2d at 762; *Luedecke,* 140 Iowa at 229, 118 N.W. at 458. A review of the factors Iowa courts have

considered persuades us that the Burdens are entitled to an equitable lien on the Universal property the defendants received.

One factor Iowa courts have considered in determining whether a transaction is a bona fide transfer in the ordinary course of business is the transferee's awareness of the existence of the creditor's claim at the time of the transfer. *See Nelson,* 298 N.W.2d at 285; *Farnsworth,* 158 N.W. at 747; *Luedecke,* 118 N.W. at 458.

The individual defendants had notice of the Burdens' claim in July 1979, when the Burdens filed their action for rescission in Missouri state court. That action was pending when the Versmans and Leon first discussed the possibility of liquidating Universal in late 1980, when Universal transferred its ride inventory and accounts receivable to Kiddie Rides in early 1981, and when Universal paid cash dividends of $102,446.00 to Leon, Robert Versman, and Dan Versman's estate on March 15, 1981. Robert Versman was served with the complaint in the Burdens' federal court rescission action on July 8, 1982. That action was pending when Kiddie Rides redeemed Dan Versman's estate's Universal stock on August 16, 1982, when Universal adopted resolutions for liquidation on October 27, 1982, and when the agreement to redeem Leon's Universal stock was executed on February 15, 1984. Thus, the individual defendants and the corporations of which they were principals all had knowledge of the Burdens' claim at the time that Universal's property was transferred to them. *See Farnsworth,* 158 N.W. at 747 (knowledge of corporation's creators is imputed to corporation itself for purpose of determining good faith).

 A second factor in assessing the propriety of imposing an equitable lien on transferred corporate property is whether the transferee gave consideration directly to the transferor corporation or to some third party. *See Farnsworth,* 158 N.W. at 747; *Luedecke,* 118 N.W. at 458. A transfer of corporate assets in which the transferee pays consideration directly to the transferor's shareholders or creditors rath-

er than to the transferor corporation itself is not a bona fide transfer in the ordinary course of business. *See Smith*, 208 N.W.2d at 39 (transferee agreed to use transferor's assets to liquidate transferor's debts under plan proposed by some of transferor's creditors); *Farnsworth*, 158 N.W. at 747 (transferee corporation issued its stock in payment for transferred assets directly to shareholders of transferor corporation); *Luedecke*, 118 N.W. at 458 (transferee of corporate assets issued its own stock in payment directly to sole shareholder of transferor).

In this case, Kiddie Rides charged off the note it exchanged for Universal's ride inventory and accounts receivable primarily by making or agreeing to make payments directly to Universal's shareholders and creditors. Kiddie Rides assumed liability of $32,548.00 for redemption of Leon's Universal stock and $8,045.00 for a loan Universal owed to Leon. Kiddie Rides paid Dan Versman's estate $32,264.45 to redeem its Universal stock and $7,375.00 to satisfy a loan Universal owed the estate. Kiddie Rides assumed a Universal note payable to Robert Versman for $5,245.80. Thus, $85,-478.25 of the $117,616.14 Kiddie Rides owed to Universal on December 31, 1981 was discharged through payments or agreements to make payments directly to Universal's shareholders and creditors. None of these payments ever entered Universal's coffers, where they would have been available to Universal's other unsecured creditors, such as the Burdens.

Finally, Iowa courts have found that transfers of corporate assets made before the transferor has paid or made provisions to pay its unsecured debts, including dividends or distributions of corporate property to shareholders, do not constitute transfers in the ordinary course of business. *See Nelson*, 298 N.W.2d at 286; *Luedecke*, 118 N.W. at 457–58. Here, Universal's transfer of inventory and accounts receivable to Kiddie Rides which resulted in the redemption of two-thirds of Universal's outstanding stock, its issuance of cash dividends to its shareholders early in 1981, and its resolution to liquidate and its assignment of its remaining assets in October 1982 all were made without provision for the payment of the Burden's then-pending claim.

For the foregoing reasons, we find that the district court erred in concluding that the transfers of property among Universal, Kiddie Rides, and Universal's shareholders which culminated in Universal's liquidation were bona fide transfers in the ordinary course of business. Accordingly, the Burdens are entitled to enforce their judgment against Universal through an equitable lien on the assets which Universal transferred to Kiddie Rides and to the individual defendants. To the extent that Universal property transferred to the defendants has subsequently entered the hands of bona fide purchasers for value, the defendants are personally liable for satisfaction of the Burdens' judgment up to the fair market value on the date of transfer of the Universal assets they received. *See Nelson*, 298 N.W.2d at 288–89.

### CONCLUSION

We reverse the judgment of the district court. Judgment shall be entered for the plaintiffs against Kiddie Rides, Robert Versman, Dorothy Versman, and Thomas Leon in the amount of $47,344.01, the amount of plaintiffs' judgment against Universal, plus costs and interest from June 26, 1985.