INTERSTATE INVESTMENT & DEVELOPMENT COMPANY, Appellee, v. CLEMENT L. WEBSTER, Appellant.

**CORPORATIONS: Accounting Against Officer.** An officer of a corporation who, after a sale of corporate stock *by the corporation*, substitutes, without authority, stock personally owned by him, and withdraws the amount thereof from the corporate treasury, will, in an action for accounting, be charged with the amount so withdrawn.

**CORPORATIONS: Accounting—Burden of Proof.** Claims, in an action for accounting, may not be allowed, on testimony which is so uncertain, indefinite, and unsatisfactory that not even approximate accuracy can be arrived at.

*Appeal from Floyd District Court.*—C. H. KELLEY, Judge.

MAY 15, 1920.

SUIT in equity for an accounting. The material facts will be referred to in the course of the opinion. There was a decree finding the defendant indebted to plaintiff in the sum of $17,267.76, for which amount judgment was entered against him. The defendant appeals.—*Affirmed.*

*Edwards, Longley, Ransier & Smith, J. C. Campbell, W. M. Brouillard,* and *H. J. Fitzgerald,* for appellant.

*Dawley & Jordan, W. G. Henke,* and *H. L. Lockwood,* for appellee.

STEVENS, J.—The transactions out of which the controversy involved upon this appeal arose are numerous, and

cover a long series of years. Appellant's abstract contains 205 pages, and appellee's amended abstract, 160 pages. While counsel have somewhat lightened the labor of the court by confining argument to a few items of the account, the failure to refer to pages and lines of the abstract has imposed considerable unnecessary labor upon the court.

Plaintiff is a corporation, and was organized in 1903, "to prospect for, locate, purchase, lease or otherwise acquire land, mines, mineral claims, oil leases, coal mines or any other property," and, prior to the platting and laying out of Lithograph City, had its principal place of business at Charles City, Iowa.

The defendant, Clement L. Webster, a geologist, mineralogist, mining engineer, and expert, was employed by plaintiff, at the time of its organization, to locate various properties, for carrying out the purposes for which the corporation was formed. By the original contract of employment as mining expert, defendant was to receive 20,000 shares of stock and $3 per day and his expenses, for services rendered. The corporation was capitalized at $50,000, divided into shares of the par value of 25 cents each. The defendant in 1903 located quarries along and adjacent to the old bed of the Cedar River in Floyd County. Land was shortly thereafter purchased, and plans made for the development of the quarry, which was found to contain quantities of fine lithographic stone, cement, and marble, and a large number of gems, such as moss agate, amethyst, and others of the inferior class of gems. A portion of the land purchased was laid out in lots, and Lithograph City came into existence. Later, 280 acres of land were added to the holdings of the corporation. Several buildings, deemed necessary for the proper conduct and advertisement of its business, were erected by plaintiff, including a polishing plant, lumber yard, printing plant, etc. Among the several buildings constructed was a museum, in which the gems and

other products of the quarry were displayed. This build-
ing is, however, one of the items in controversy. Many in-
teresting matters were brought out in the testimony, a
recital of which is not necessary to a proper understand-
ing and decision of the questions presented, and we there-
fore refrain from an extended statement thereof. The de-
fendant, shortly after his employment, became a member of
the board of directors, and at different times occupied the
position of chairman thereof, of the executive and auditing
committees, treasurer, secretary pro tem, and president,
and, during a part of the time, filled all of the above posi-
tions at the same time. As stated, the action is for an ac-
counting. The funds of the corporation were generally paid
to and disbursed by defendant, or under his instructions.
The amount demanded of defendant in plaintiff's petition is
$97,416.32. Defendant, by way of cross-petition and coun-
terclaim, asserts that there is a balance due him of
$30,606.02. Counsel for appellant, however, limit argument
to the following items of the petition, which the court
charged against defendant: Cost of the museum building,
$5,750.30; $1,000 on account of the sale of what is referred
to in the evidence as the Splinter stock; $500 borrowed
from one Dixon Cottingham, for which a company note was
given, but which, it is claimed, was appropriated by defend-
ant; $145.97 for an alleged fake survey; and the following
items of defendant's counterclaim, which the court refused
to allow: A note for $6,730.74, dated August 23, 1911;
$6,880 for services at $4 per day, from 1911 to and includ-
ing a part of 1917; $1,927.28 for money advanced by de-
fendant to plaintiff. Two other items are also referred to in
argument: One of $750.15, charged against the defendant
for an automobile and repairs paid for with company
money, and another item of $12,108, commissions claimed
by defendant for the sale of stock.

Before proceeding to a discussion of the several claims

of the respective parties, it should be noted that, so far as disclosed by the record, the only source of plaintiff's income was from the sale of stock. Many thousands of dollars were, however, realized from this source, the stock being sold at from 25 cents to $25 per share, large commissions for selling being allowed the company's representatives.

It is conceded that the material used in the construction of the museum was furnished, or paid for, by defendant, and that the amount charged against the defendant, if properly chargeable to him, is not excessive. The building was erected on lots owned by defendant; but it is alleged, in an amendment to his answer and cross-petition, that it in fact belonged to plaintiff, for whom defendant held same in trust. The building was used as a place in which the gems and other products of the company were exhibited, but defendant has always claimed to be the owner thereof. A private account of defendant, offered in evidence, was found to contain many charges against plaintiff not insisted upon in his pleadings or at the trial. Among the several items appearing upon said account is a charge of $5,000 for the rent of the museum. Title to the lots on which the building was situated at the time of the trial was in the name of defendant's wife, to whom he had conveyed the same. In the amendment to his answer referred to, he tendered a deed, conveying the property to plaintiff.

The attitude of defendant with reference to the management, control, and operation of plaintiff's business, and the claims made by him, render it extremely difficult to determine from the record what should be charged against or credited to him. His testimony was uncertain, indefinite, and unsatisfactory. We do not, however, feel that we can give a better reason for holding that the building belonged to plaintiff than that given by the trial court, in

1. CORPORATIONS: accounting against officer.

its holding that same was the property of defendant. It is true that the products of the company were exhibited in the museum, but the collection was gathered by defendant, who claimed at least a considerable part thereof as his property. The item of $1,000, charged to defendant on account of the Splinter stock transaction, is manifestly right. Stock of the company was sold to Splinter, and defendant substituted stock held by him therefor, and withdrew $1,000 from the funds of plaintiff in payment thereof. This was wholly without authority.

The item of $500 borrowed money presents another difficulty. That the money was borrowed upon the company's obligation is freely conceded, the defendant testifying that he deposited the same in one of the banks in which plaintiff's account was kept, and that same was expended for the benefit of the company; but he was unable to identify the item upon any of the books of the company or banks. The court below evidently reached the conclusion that this sum was retained by defendant. We are unable to find justification in the record for disturbing this holding. The item of $145.97 for the fake survey represents a sum expended by defendant without authority, although he claims it was for the benefit of plaintiff, and expended with the knowledge of the board of directors. The survey was characterized by him as a "bluff," and, so far as disclosed, was not, and could not have been, of any benefit whatever to the corporation.

Passing, now, to the disputed items of defendant's counterclaim: The first one is the note of $6,730.34, bearing date August 23, 1911, signed by the Interstate Investment & Development Company, Clement L. Webster, president, Wm. Blumenstiel, secretary, J. W. McLaughlin, second vice-president. The claimed consideration for this note was services which defendant performed for plaintiff,

2. CORPORATIONS: accounting: burden of proof.

at an agreed compensation of $3 per day, under the original contract of employment. At the time this note was executed, defendant was president of plaintiff company. His bill for services was presented at a meeting of the board, presided over by himself, at which four other members were present. Krinklaw and Klinetop, members of the board, constituted the auditing committee appointed for the year; but, at the meeting in question, defendant appointed a temporary auditing committee to pass upon his bill, whereupon the two members above named left the meeting. According to the testimony of the two members of the temporary auditing committee, defendant threatened them with bankruptcy proceedings if they did not sign the note. The bill was allowed, but without more than a casual examination, defendant voting therefor; and the note was executed. Not long after defendant's employment as mining expert at $3 per day, he became a member of the board of directors, took charge of, and thereafter appears to have dominated, plaintiff's affairs. It is impossible to determine from the evidence what services he rendered, or what amount, if any, was due him at the time the note was given. The court below found that he had collected and retained many thousands of dollars of plaintiff's funds, and ordered a cancellation of the note. We have already indicated the unsatisfactory character of defendant's testimony, and cannot therefrom make anything like a definite finding as to the amount, if anything, that should be allowed him on the note. The proof as to the item of $6,880 for services as mining expert at $3 per day is likewise too indefinite and uncertain to sustain a finding in defendant's favor. No one can tell for what services he should be paid under his contract, if he had a valid contract of employment. The action of the board of directors upon which defendant bases a right to recover this sum is as follows:

"Motion made, seconded, and carried that Clement L.

Webster be allowed $4.00 per day, when actually engaged as scientific expert for the company.

"Conditions upon which Clement L. Webster accepts the position of scientific expert: 10 years period; that he should be issued 20,000 shares of the capital stock of said company, as part payment, and also to have additional compensation.

"It was further left to Clement L. Webster to designate, in his bill for labor performed, just what periods of time when said Webster does not claim compensation in his bills."

It will be observed that it was the duty of defendant to designate the period of time for which compensation under the above motion was not claimed by him. The bill presented covered the entire time, while the evidence showed that but a small portion thereof was devoted to rendering services as mining expert. It is impossible to determine from the record the number of days he worked. The defendant's testimony, as in other matters, was so indefinite and uncertain as to make even an approximation of the number of days for which he was entitled to compensation impossible. The same is true as to the item of $1,927.28 for. money loaned. While an itemized account was offered in evidence, defendant was able to throw but little light thereon, and the items of the account were made largely from memory. It is probable that he advanced and expended money in the management of plaintiff's business, but the burden was on him to show the amount. He is demanding and has received large compensation for other services rendered during this period, and we think the item was properly rejected by the court.

The remaining items need not be given separate consideration. The evidence in relation thereto is quite as unsatisfactory as that covering the items above mentioned. The business of plaintiff corporation has, so far, been profit-

able only to the extent of money received from the sale of stock. Defendant appears to have devoted much time and effort to promoting the enterprise. His reports to plaintiff as treasurer and expert are filled with exaggeration, and his claims as to the value of plaintiff's holdings apparently quite unreasonable. While he did not, upon the trial, or in any of the pleadings filed by him, seek to recover upon many items, amounting to thousands of dollars, charged in his private account against plaintiff, the fact that such charges were entered throws light upon the probable fairness and justness of the claims actually asserted. Among the items appearing in this account was one of $2,500 for legal services rendered, although defendant was not a lawyer; $5,000 rental for the use of the museum building; a charge for the use of the Ford automobile; and many other items. The explanation offered by defendant of these entries upon his private account was that his attorney had suggested that he make out a statement, charging plaintiff with all claims he could make against it. He abandoned the items referred to, upon the advice of other attorneys, who informed him that he could not recover thereon.

Defendant is not wholly to blame for the situation of plaintiff's affairs. The board of directors appears to have permitted him to dominate the business and direct the policy of the company. The interest of many stockholders is, however, naturally involved, and we reach the conclusion that the adjustment of the respective claims of the parties by the court below is as near right as could be reached upon the record, and it is, therefore,—*Affirmed.*

WEAVER, C. J., LADD and GAYNOR, JJ., concur.