MURIEL KURTZ, Receiver, Appellant, v. J. A. OXBORROW, Appellee.

No. 45905.

AUGUST 11, 1942.

Maher & Mullen, of Fort Dodge, for appellant.

Price, Rider & Keefe, of Fort Dodge, and Franklin Jaqua, of Humboldt, for appellee.

OLIVER, J.—Action in equity by the receiver of Pioneer Finance Corporation against J. A. Oxborrow for an accounting for funds received from the corporation. Trial to the court resulted in decree for defendant. The receiver appeals.

Pioneer Finance Corporation was organized in 1928, with its principal place of business at Humboldt, Iowa. About 1931 it moved to Fort Dodge, and there continued business until May 1939. The receiver was appointed in 1940. The principal stockholders of said corporation were Wiggins and Lindhart, who had active charge of its affairs. Prior to the time the corporation left Humboldt, and at all times subsequent thereto, appellee Oxborrow, a resident of Humboldt, was an officer and director thereof. However, his actual contact with the business appears to have been limited to attendance at corporate meetings.

At Fort Dodge the corporation occupied offices with Home Owned Finance Corporation, which was also controlled and operated by Wiggins and Lindhart. Both corporations appear to have been engaged in the business of financing the purchase of automobiles. Appellee was not an officer or director of Home Owned Finance Corporation, but had loaned that corporation. $2,350, and owned $4,400 of its capital stock. The $2,350 loan was evidenced by a note of Home Owned Finance Corporation and was collaterally secured by about $3,000 of automobile mortgages. From time to time, as these collateral mortgages were paid to Home Owned, it substituted therefor new collateral so that appellee continued to hold as collateral about $3,000 of current paper of the same character.

About January 1933, Wiggins and Lindhart proceeded to liquidate Home Owned Finance Corporation and transfer its

business to Pioneer Finance Corporation. They acquired for themselves most of the outstanding stock of the Home Owned by exchanging therefor some of their personal stock in the Pioneer. The assets of the Home Owned were transferred to Pioneer, which was its principal creditor. Appellee was the only other creditor. His note was secured. It bore interest at 8 per cent. Wiggins and Lindhart proposed to appellee that Pioneer pay him at the rate of $35.25 per month. This figure was obtained in the following manner: The annual interest upon the note was $188. To this was added $235, 10 per cent of the principal, which they proposed should be paid each year. This totaled $423 per year, divided into 12 monthly payments of $35.25. Since the payments upon principal would reduce the amount of interest earned, appellee figured the note would be paid in about 90 monthly payments. He agreed to the proposition and later surrendered his collateral to Pioneer. He received 75 monthly payments of $35.25 ($2,643.75) between this time and April 1939. It is this $2,643.75 which appellant asserts appellee should be required to repay.

In connection with the settlement upon the note, Wiggins and Lindhart discussed with appellee the question of redemption of his stock in Home Owned. There is some evidence that this matter was left to be worked out later, and other evidence that the stock was to be redeemed at par, subject to the privilege on the part of Wiggins and Lindhart of exchanging Pioneer stock for appellee's stock in Home Owned and also for the unpaid balance of appellee's note. Based upon this and some other statements in the record, appellant contends part of this $2,643.75 was paid appellee for his stock in Home Owned. We do not think the entire testimony of any witness may be fairly interpreted as tending to sustain this contention, or that it is supported by the surrounding circumstances. It is clear the computation which resulted in the monthly payments of $35.25 was based solely upon the $2,350 secured note. Appellee's testimony that the payments were made upon the debt is further supported by the showing that they were credited upon the back of the original note and a renewal note. We conclude, as

did the trial court, that the payments were made and received solely in partial satisfaction of principal and interest of the $2,350 debt of Home Owned assumed by Pioneer.

As heretofore noted, Pioneer took over all the assets of Home Owned. It recognized appellee's rights as the only other creditor. Perhaps it could have been compelled to recognize the rights of any creditor. See Luedecke v. Des Moines Cabinet Co., 140 Iowa 223, 118 N. W. 456, 32 L. R. A., N. S., 616. In any event, it was not improper that, having taken over the business and assets, Pioneer should pay the liabilities of Home Owned. Moreover, appellee held $3,000 in Home Owned automobile mortgages as security for the $2,350 debt. This was current paper, most of which was paid shortly thereafter. Therefore, it was to Pioneer's advantage to obtain these mortgages by agreeing to pay appellee's $2,350 note.

Wiggins and Lindhart, Pioneer's managing officers, represented that corporation in the negotiations and agreement which were had with appellee. It does not appear that the transaction resulted in loss to Pioneer. Nor was there a prospective profit for appellee. He surrendered his collateral in exchange for Pioneer's unsecured promise to pay the debt in about 90 monthly installments. There is no suggestion that Pioneer was not solvent at the time and it is a fair assumption that appellee would not have made the deal had he thought Pioneer would be unable to pay him in full. Nor is it contended that Pioneer was insolvent during the following six years in which the payments were made to appellee.

Appellant cites Hoyt v. Hampe, 206 Iowa 206, 214 N. W. 718, 220 N. W. 45; Dawson v. National L. Ins. Co., 176 Iowa 362, 157 N. W. 929, L. R. A. 1916E, 878, Ann. Cas. 1918B, 230; Interstate Inv. & Dev. Co. v. Webster, 188 Iowa 1389, 177 N. W. 554. Those cases are not factually in point. With the rule that the burden is upon a managing officer or director of a corporation to prove good faith, fairness, and honesty in his transactions with it, we are in agreement. See 13 Am. Jur. 958. But, in the language of the able trial court with which we agree, "* * * Oxborrow has met that burden, and there does not appear

to be any evidence in the record of any collusion, fraud, or sharp practices.''

Wherefore, the decree is affirmed.—Affirmed.

WENNERSTRUM, C. J., and BLISS, SAGER, STIGER, MILLER, and HALE, JJ., concur.